SANDRA L. McDONOUGH (SBN 193308)
smcdonough@paulplevin.com
**PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: 619-237-5200
Facsimile: 619-615-0700

Attorneys for Defendant THE REGENTS OF
THE UNIVERSITY OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| BENJAMIN SHERMAN and ZAYD HAMMOUDEH, <br><br> Plaintiffs, <br><br> v. <br><br> THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, and DOES 1 through X, inclusive, <br><br> Defendants. | Case No. 5:20-cv-06441 <br><br> [Superior Court of the State of California, County of Santa Cruz Case No. 20CV01524] <br><br> **NOTICE OF REMOVAL** |

TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO ALL PARTIES AND

THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant The Regents of the University of California

("Defendant" or "The Regents"), hereby removes this action from the Superior Court of California

for the County of Santa Cruz, to this Court.  The state court action ("Action") is a civil action over

which this Court has original jurisdiction under 28 U.S.C. § 1331.  Therefore, The Regents may

remove the Action to this Court pursuant to 28 U.S.C. § 1441.

/ / /

/ / /

/ / /

/ / /

# I.

## CASE HISTORY

1.    On July 17, 2020, Plaintiffs Ben Sherman and Zayd Hammoudeh ("Plaintiffs") filed an action in the Superior Court of the State of California for the County of Santa Cruz entitled *Sherman & Hammoudeh v. The Regents of the University of California* which was assigned case number 20CV01524.  A true and correct copy of the Complaint and supporting documents is attached hereto as **Exhibit A.**

2.    On August 14, 2020, the Summons and Complaint were served on The Regents.  A true and correct copy of the Proof of Service of Summons is attached hereto as **Exhibit B.**

3.    On or about August 14, 2020, Plaintiffs served The Regents with the Notice of Case Management Conference, currently scheduled for November 17, 2020, along with the Summons and Complaint.  A true and correct copy of the Notice of Case Management Conference is attached hereto as **Exhibit C**.

4.    On September 10, 2020, Plaintiffs filed a Notice of Deposit of Jury Fees.  A true and correct copy of the Notice is attached hereto as **Exhibit D.**

4.    On September 11, 2020, The Regents filed its Answer to the Complaint.  A true and correct copy of the Answer is attached hereto as **Exhibit E**.

5.    Other than Exhibits A-E, The Regents is not aware of any other documents in the state court case file.

6.    In accordance with 28 U.S.C. § 1446(d), counsel for The Regents certify that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiffs' counsel and filed with the Clerk of the Superior Court of California, County of Santa Cruz. Therefore, all procedural requirements under 28 U.S.C. § 1446 have been satisfied.

7.    Defendant is informed and believes that no defendant other than the named defendant has been joined or served in this action.

/ / /

/ / /

/ / /

## II.

## JURISDICTION

8.     This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441(a) in that it arises under both Title VI (42 U.S.C. § 2000d, *et seq.*) and Title IX (20 U.S.C. § 1681, *et seq.*).

9.     The Complaint's fourth, fifth, sixth, and seventh causes of action are state-law claims that are related to the Complaint's first, second, and third causes of action and form part of the same case or controversy, and this Court may exercise supplemental jurisdiction over those state-law causes of action.  28 U.S.C. § 1367; *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997).

## III.

## INTRADISTRICT ASSIGNMENT

10.     Removal to this judicial district and division is proper because they "embrac[e]" the County of Santa Cruz, the "place where [this] action is pending."  28 U.S.C. § 1441(a).

WHEREFORE, The Regents prays the above action now pending against it in the Superior Court of the State of California for the County of Santa Cruz be removed to this Court.

Dated:  September 14, 2020                PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

By:     */s/ Sandra L. McDonough*
_____
SANDRA L. McDONOUGH
Attorneys for Defendant THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA

# TABLE OF CONTENTS

| Exhibit | Description | Page No. |
|---------|-------------|----------|
| A | Plaintiff's Complaint for Damages and For Damages and Demand for Jury Trial filed in Santa Cruz County Superior Court on July 17, 2020, Case No. 20CV01524 | 5 |
| B | Proof of Service of Summons filed August 14, 2020 | 53 |
| C | Case Management Information and Setting filed July 21, 2020 | 56 |
| D | Plaintiffs' Notice of Deposit of Jury Fees filed on September 10, 2020. | 58 |
| E | Defendant's Answer to Plaintiff's Complaint filed in Santa Cruz County Superior Court on September 11, 2020. | 62 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

*Steven Foster*
*8-14-20   1:25 pm*

**SUM-100**

# SUMMONS
## *(CITATION JUDICIAL)*

Accepted on Behalf
of the Regents Only

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
7/17/2020 5:58 PM
Alex Calvo, Clerk
By: Richard Seago, Deputy

*Richard Seago*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, and DOES I
through X, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

BENJAMIN SHERMAN and ZAYD HAMMOUDEH

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: Superior Court of CA, Co. of Santa Cruz<br>*(El nombre y dirección de la corte es):*<br>Civil Division<br>701 Ocean Street, Room 110<br>Santa Cruz, CA 95060 | **CASE NUMBER:**<br>*(Número del Caso:)*<br>**20CV01524** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jonathan H. Siegel / Latika Malkani / Laura Herron Weber
SIEGEL LEWITTER MALKANI, 1939 Harrison Street, Suite 307, Oakland, California 94612; Tel: (510) 452-5000

| DATE: 07/17/2020 | **ALEX CALVO** | Clerk, by | *Richard Seago* | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | Richard Seago | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* The Regents of the University of California

under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☒ other *(specify):* CCP 416.50 (public entity)

4. ☒ by personal delivery on *(date):* August 14, 2020

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Jonathan H. Siegel (SBN 78143)
Latika Malkani (SBN 184301)
Laura Heron Webber (SBN 226934)
SIEGEL LEWITTER MALKANI
1939 Harrison Street, Suite 307
Oakland, CA 94612
Tel:   (510) 452-5000
Fax:   (510) 452-5004
jsiegel@sl-employmentlaw.com
lmalkani@sl-employmentlaw.com
lwebber@sl-employmentlaw.com

*Attorneys for Plaintiffs Benjamin Sherman
and Zayd Hammoudeh*

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
7/17/2020 5:58 PM
Alex Calvo, Clerk
By: Richard Seago, Deputy

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SANTA CRUZ

| | |
|---|---|
| BENJAMIN SHERMAN and ZAYD HAMMOUDEH, <br><br> Plaintiffs, <br><br> v. <br><br> THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, and DOES I through X, inclusive, <br><br> Defendants. | ) Case No.: 20CV01524 <br> ) <br> ) **COMPLAINT FOR DAMAGES AND** <br> ) **DEMAND FOR JURY TRIAL** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>INTRODUCTION</u>

1.      Plaintiffs, Benjamin Sherman ("Plaintiff Sherman") and Zayd Hammoudeh ("Plaintiff Hammoudeh") (collectively "Plaintiffs"), bring this action against The Regents of the University of California and Does I through X (hereinafter "Defendants"), for racial, religious and/or national origin based harassment, for sex-based hostile work environment harassment, and for discrimination based on national origin, in violation of the California Fair Employment and Housing Act, Government Code Section § 12940 *et seq.* ("FEHA"), and for intentional discrimination in violation of California's Unruh Civil Rights Act, California Civil Code § 51 et seq.  Plaintiffs additionally bring this lawsuit to remedy Defendants' deliberate indifference in

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

1  violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX") and

2  Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"). Plaintiffs were

3  repeatedly subjected to vulgar sexually-charged and other harassment by Dr. Dimitris Achlioptas,

4  a professor at the University of California, Santa Cruz ("UCSC"). Professor Achlioptas also

5  repeatedly subjected Plaintiff Hammoudeh to offensive and degrading comments about his race,

6  religion, and national origin. The severe, pervasive, and offensive harassment and discrimination

7  by Professor Achlioptas, and the University's deliberate indifference to this harassment caused

8  Plaintiffs to lose educational benefits and opportunities and to suffer extensive emotional distress.

9  <u>**JURISDICTION AND VENUE**</u>

10      2.    Plaintiffs bring this action based on state and federal statutory claims. This Court

11  has jurisdiction to hear this lawsuit because it includes claims made pursuant to California state

12  law, to wit, the California Fair Employment and Housing Act and the Unruh Civil Rights Act.

13  Moreover, this Court has jurisdiction over the claims because the wrongful acts alleged herein

14  were committed in whole or in part in California, and the harms occurred in California. Further,

15  the amount in controversy exceeds the minimum jurisdictional requirements of the law.

16      3.    Venue is proper in the County of Santa Cruz pursuant to pursuant to California

17  Code of Civil Procedure § 395, subdivision (a), and Government Code § 12965, subdivision (b),

18  because both Plaintiffs worked for Defendant in the County of Santa Cruz, were graduate

19  students at Defendant's University in the County of Santa Cruz, the unlawful practices

20  complained of herein were committed by defendants and their employees in the County of Santa

21  Cruz, and the injuries occurred within the County of Santa Cruz.

22      4.    Plaintiffs Sherman and Hammoudeh have exhausted all required administrative

23  remedies, and this case is procedurally ripe for adjudication before this Court as follows: On July

24  17, 2019, Plaintiffs separately filed charges of discrimination against Defendant, with the

25  Department of Fair Employment and Housing ("DFEH") and received automatic Right to Sue

26  letters. True and correct copies of the DFEH complaints and right to sue letters are attached

27  hereto as **Exhibits A and B**.

28  //

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612

T: (510) 452-5000
F: (510) 452-5004

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**PARTIES**

5. Plaintiff Benjamin Sherman is a male and citizen and resident of the State of California. At all relevant times herein, Plaintiff Sherman was a student at UCSC.

6. Plaintiff Zayd Hammoudeh is a male of Muslim, Arab, and Palestinian descent and a citizen and resident of Eugene, Oregon. At all relevant times herein, Plaintiff Hammoudeh was a graduate student at UCSC and a resident of the State of California.

7. The University of California, Santa Cruz, is a public educational institution located in Santa Cruz, California. It is governed by the Regents of the University of California ("Defendant"). UCSC and Defendant receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681 and is otherwise subject to Title IX and Title VI.

8. Plaintiffs are unaware of the true names and capacities of those individuals and/or entities sued herein as defendants Does I through X, inclusive, and therefore sues those defendants by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of said defendants when the names have been ascertained.

**GENERAL ALLEGATIONS**

9. Benjamin Sherman and Zayd Hammoudeh are two bright young men who pursued advanced degrees in Computer Science and Engineering at UC Santa Cruz. Both chose Professor Dimitris Achlioptas as their advisor because of his academic reputation in their chosen field of research and the career opportunities it would bring them. Both students dedicated their lives for many months to their research in pursuit of their academic goals, and also served as employees of the University. Their education became a nightmare when Professor Achlioptas subjected them to vulgar sexually charged abuse (and racial harassment in the case of Mr. Hammoudeh) that caused lasting psychological trauma and forced them both to abandon their research and education at UCSC. Furthermore, each has been set back years in their education and career advancement and denied academic opportunities that can never be restored.

10. The tragedy of this case is that Zayd Hammoudeh, and later Ben Sherman, reported the abuse, and UCSC had the opportunity to stop the harassment, and avoid further damage to Mr. Hammoudeh and Mr. Sherman's health and academic careers. Instead, UCSC

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

1    refused and/or delayed taking action until both Mr. Sherman and Mr. Hammoudeh had been

2    forced to abandon their research because of the abuse.  UCSC also allowed and even condoned

3    its faculty members to engage in open retaliation against Plaintiffs, and especially against

4    Plaintiff Sherman, and took no timely or effective action to stop the retaliation.  Ultimately, these

5    young men were vindicated years later as Defendant's delayed investigations into their

6    allegations have resulted in factual findings that Professor Achlioptas, as well as other professors

7    that enabled him, engaged in conduct that that violated Defendant's own Sexual Violence Sexual

8    Harassment Policy and otherwise violated their rights.  Thankfully, Professor Achlioptas has

9    been forced to resign, and will no longer be in the position to abuse students.  However, Mr.

10   Hammoudeh and Mr. Sherman have paid a terrible and irreparable cost in bringing this injustice

11   to light, and their lives have been damaged both personally and professionally.  This damage

12   could have been avoided if Defendant had acted appropriately and promptly, instead of acting

13   with the deliberate indifference prohibited by Title VI and Title XI.

14   **Plaintiff Benjamin Sherman**

15       11.    Plaintiff Sherman started at UCSC as an undergraduate student in the Fall of 2013.

16   After graduating with a degree in Computer Science in 2017, Mr. Sherman decided, upon the

17   advice of Professor Achlioptas, to pursue a master's degree in computer science at UCSC.

18       12.    From approximately March 2016 until December 2018, Plaintiff Sherman

19   conducted research under the advisement of Professor Achlioptas as part of a research

20   collaboration with Professor Nikolaos (Nik) Sgourakis, in the chemistry department.  Throughout

21   this time, Professor Achlioptas regularly subjected Mr. Sherman to sexually charged comments,

22   inappropriate inquiries into Plaintiff Sherman's sex life, and abusive and threatening conduct.

23       13.    Although Mr. Sherman was paid to work 20 hours a week, he was expected to

24   work as much as needed, and was often on the phone with Professor Achlioptas in the middle of

25   the night, and on weekends.  During these interactions, Professor Achlioptas routinely used

26   inappropriate sexualized language to belittle and intimidate Mr. Sherman.  Professor Achlioptas

27   frequently made comments such as "is your dick really that small" or "suck my dick."  On

28   multiple occasions, Professor Achlioptas used the term "anal rape" to refer to his treatment of

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612

T: (510) 452-5000
F: (510) 452-5004

4

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   Plaintiff, including asking Plaintiff to "bend over" before berating him and "are you ready to be

2   anally raped?"

3       14.    Professor Achlioptas also frequently insulted Mr. Sherman by calling him "his

4   bitch," "pussy," "moron," "autistic," "retard," "idiot," "loser," "punk," "asshole," and "code

5   monkey."  Professor Achlioptas would often tell Plaintiff to "shut the fuck up," and refer to

6   Plaintiff's work as "shit," "crap," "a nightmare," "disgusting," "drivel," and "useless."  The

7   abusive comments occurred "like every[day] conversation," and frequently when Professor

8   Achlioptas was furious and screaming at Plaintiff.  Professor Achlioptas once equated his

9   treatment of Plaintiff to "beating a dog" in order to train it.

10      15.    Plaintiff Sherman often communicated with Professor Achlioptas over text, Skype

11  messages, or email about Mr. Sherman's work.  When the conversation intensified into abusive

12  name-calling or derogatory sexual remarks, Professor Achlioptas would pick up the phone to

13  avoid creating a record of his abuse.  Because Mr. Sherman was living with his parents at the

14  time, Professor Achlioptas would occasionally ask if anyone was listening to their calls.  Plaintiff

15  once responded, "Are you afraid that my family will hear you abusing me?"  In response,

16  Professor Achlioptas laughed and said, "Exactly."

17      16.    Professor Achlioptas' conduct also frequently included inappropriate comments

18  about Mr. Sherman's relationship with his girlfriend and his sex life.  Professor Achlioptas

19  frequently made comments like "go get laid" or "enjoy sex."

20      17.    On a number of occasions, Mr. Sherman told Professor Achlioptas that the way he

21  spoke to Plaintiff made him feel worthless and stupid.  Plaintiff also attempted to confront

22  Professor Achlioptas about his comments about his sex life.  Professor Achlioptas would respond

23  that he was joking, that Plaintiff was misinterpreting his words, or that Plaintiff should not take

24  his words personally, and continue his inappropriate behavior.

25      18.    One evening, on or around September 29, 2017, Professor Achlioptas called Mr.

26  Sherman at 9:00 pm to tell him that his work was "total crap" and that he was acting disengaged.

27  Mr. Sherman told Professor Achlioptas that he was becoming afraid of interacting with him.

28  Later on the call, Professor Achlioptas stated that Plaintiff was, "completely pussy whipped.  In



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612

T: (510) 452-5000
F: (510) 452-5004

5

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 Greece we call you a pussy slave." Professor Achlioptas went on to say, "I believe you have a

2 little bird chirping in your ear that you are 'suffering abuse' when that is far from the truth."

3 Professor Achlioptas ended the call by saying, "This is the last time we ever have a conversation

4 like this."

5        19.     Mr. Sherman was barely able to speak or move after the conversation. The next

6 few hours seemed to pass in a matter of moments for Plaintiff. The following morning, Plaintiff

7 sent an email to Professor Achlioptas informing him that he would no longer be continuing on the

8 project. However, the following week, Professor Sgourakis told Mr. Sherman that he would hate

9 to see Plaintiff leave the project and not get credit for the work he had done. Professor Sgourakis

10 tried to convince Plaintiff that Professor Achlioptas would agree to change his behavior.

11        20.     Plaintiff talked to Professor Achlioptas a few days later and returned to the project

12 based on representations that Professor Achlioptas would not contact Plaintiff at home or yell at

13 him. Plaintiff explained that the harassment had started to cause him to have panic attacks.

14        21.     Despite his promises to Plaintiff, Professor Achlioptas continued to be verbally

15 abusive towards Plaintiff and make inappropriate comments including of a sexual nature.

16 Professor Achlioptas continued to refer to Plaintiff as being "pussywhipped," and discuss

17 Plaintiff's sex life with comments, such as "how was the sex" and "are you ready to go back to

18 your masturbation routine?"

19        22.     Professor Achlioptas also initiated inappropriate and misogynistic discussions

20 about women during meetings with Plaintiff and other students. On one occasion, Professor

21 Achlioptas googled images of female celebrities and asked Plaintiff and Mr. Hammoudeh to rate

22 them on a scale of 1 to 10, which Plaintiff refused to do. On another occasion, Professor

23 Achlioptas looked up female students in his class on Facebook and commented that, "she needs

24 to be my wife" and that he was going to "masturbate to her photos." Moreover, Professor

25 Achlioptas, who was an educator of many young women in California also said, "women in

26 California are such bitches."

27        23.     While UCSC did nothing, Professor Achlioptas' harassment of Mr. Sherman

28 escalated. In late September 2018, Plaintiff Sherman worked on a poster presentation with

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

6
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   Professor Achlioptas for an upcoming conference.  During this time, Professor Achlioptas'

2   abusive conduct intensified.  Professor Achlioptas harshly disparaged all of Plaintiff Sherman's

3   work, calling it "a nightmare," "crap," "terrible," "lame," and "garbage," and referring to Plaintiff

4   Sherman as "visually retarded."  Prior to the conference, Professor Achlioptas asked Plaintiff

5   Sherman to give a short presentation of the poster to UCSC Professor Phokion G. Kolaitis.  When

6   Plaintiff Sherman finished, Professor Achlioptas said "disaster."  As Professor Kolaitis was

7   leaving the office, Professor Achlioptas said, "Now the abuse begins, you don't want to see this."

8   That evening, Plaintiff Sherman confronted Professor Achlioptas about his mistreatment and told

9   him that he had "shattered [his] confidence."

10      24.      During the Fall 2018 quarter, Professor Achlioptas had begun to refer to Plaintiff

11  Sherman as his Ph.D. student in private and in front of others.  He continued to do this, even

12  when Plaintiff Sherman, who was then pursuing a master's degree, attempted to correct him.

13  Sometime in September 2018, Plaintiff Sherman told Professor Achlioptas that he intended to

14  apply to other Ph.D. programs.  Professor Achlioptas said he was surprised, which disturbed

15  Plaintiff Sherman since he had discussed this with Professor Achlioptas the previous year.

16  Professor Achlioptas told Plaintiff Sherman that he had no chance of getting into Berkeley or

17  Stanford, the two schools that Plaintiff Sherman had hoped to attend.

18      25.      On or around November 7, 2018, Plaintiff Sherman told Professor Achlioptas that

19  he was not applying to pursue a Ph.D. program, either at UCSC or elsewhere.

20      26.      On or around December 7, 2018, Plaintiff Sherman, Professor Achlioptas, and

21  Professor Sgourakis met to discuss the authorships for the paper they intended to write.  Professor

22  Sgourakis advocated for Plaintiff Sherman to be the first author on the paper.  Professor

23  Achlioptas said that Plaintiff Sherman's authorship did not matter since he did not plan to obtain

24  a Ph.D.  As the conversation continued, Professor Achlioptas made a threat to physically assault a

25  post-doctoral researcher involved in the research that shocked both Professor Sgourakis and

26  Plaintiff Sherman and proceeded to abusively yell and scream at Plaintiff Sherman, "No, fuck

27  you, Ben!" "Yea, go motherfucker."  Plaintiff Sherman left the conversation but returned when

28  Professor Sgourakis told him that Professor Achlioptas had calmed down.

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

27.    On December 12, 2018, Plaintiff Sherman told Professor Sgourakis that he was leaving the collaboration because it was abusive and reminded Professor Sgourakis of some of the details of Professor Achlioptas' harassing and inappropriate conduct.  Professor Sgourakis urged Plaintiff Sherman to stay, arguing that despite his actions, Professor Achlioptas cared about his students.  Professor Sgourakis proposed that Plaintiff Sherman stay on the project but not interact directly with Professor Achlioptas, which Plaintiff Sherman then agreed to consider.  Plaintiff Sherman asked Professor Sgourakis to inform Professor Achlioptas that he did not want to be contacted by Professor Achlioptas again.

28.    On December 13, 2018, Plaintiff Sherman met with Alexander Wolf, the Dean of the Baskin School of Engineering at UCSC, to complain about  Professor Achlioptas' years of harassing and abusive conduct, providing details and corroborating much of what Plaintiff Hammoudeh had complained to Dean Wolf about months earlier, on August 28, 2018, as described in detail below.

29.    On December 21, 2018, Plaintiff Sherman met with the Title IX office to again report his concerns about Professor Achlioptas' abusive and harassing conduct.  Plaintiff Sherman also informed the Title IX office that Professor Sgourakis had observed the abusive conduct over the past three years but urged Plaintiff Sherman to stay in the abusive, harassing relationship and discouraged Plaintiff Sherman from consulting anyone about the harassment he was experiencing.

30.    Finally, in late December 2018, nearly four months after Plaintiff Hammoudeh came forward with a detailed, written complaint of repeated vile behavior, and only after a second student, Mr. Sherman, filed a UCSC finally placed Professor Achlioptas on involuntary paid leave.

31.    When Professor Sgourakis contacted Plaintiff Sherman about an opportunity for their project to become a collaboration with a prestigious laboratory at the University of Washington, Plaintiff Sherman had already decided he was unwilling to subject himself any further to a toxic environment.  In early January, Plaintiff Sherman informed Professor Sgourakis that he had made a final decision not to continue the collaboration.  Due to his fear of running



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 into Professor Achlioptas, and being subjected to further harassment, Plaintiff Sherman gave up

2 two laboratory workspaces on campus, even though he continued to need them for duties such as

3 his teaching assistant position.

4   32. Shortly after Plaintiff Sherman filed his complaint with UCSC, he began to

5 experience retaliatory conduct from Dr. Sgourakis.  On January 4, 2019, Professor Sgourakis

6 wrote a letter to Dean of Students Garrett Naiman, falsely stating that Plaintiff Sherman had

7 become mentally unstable due to mismanagement of psychiatric medication.  Throughout the

8 Winter and Spring quarters of 2019, Dr. Sgourakis also sent Plaintiff Sherman emails in which he

9 stated that he had completed the work for the publication of their joint paper, directly

10 contradicting his own past statements seeking to name Plaintiff Sherman the first author on the

11 publication.

12   33. On February 7, 2019, nearly six months after UCSC first received notice of

13 Professor Achlioptas' abuse from Plaintiff Hammoudeh, the Title IX office finally commenced

14 an investigation into Plaintiff Sherman's Title IX allegations.  The investigation, which

15 concluded on July 16, 2019, nearly a year after Plaintiff Hammoudeh had complained and long

16 after Plaintiff Sherman graduated from UCSC, found substantiated evidence that Professor

17 Achlioptas' conduct violated the UC Sexual Violence Sexual Harassment Policy.

18   34. While Plaintiff Sherman completed the last few months of his master's program,

19 the University took retaliatory actions against Plaintiff Sherman, further depriving him of

20 educational opportunities and benefits at UCSC.  The director of the graduate computer science

21 program, UCSC Professor Alex Pang, told Plaintiff Sherman that he needed to start over and find

22 a new research project.  Plaintiff Sherman was forced to seek assistance from Dean Wolf in order

23 to form a thesis committee.  At Professor Achlioptas' request, the thesis committee outrageously

24 insisted—the day before Plaintiff Sherman's thesis was to be approved—that Plaintiff Sherman

25 credit his abuser, Professor Achlioptas, multiple times in the body of the thesis, contrary to

26 UCSC thesis guidelines.  Professor Sgourakis subsequently filed a formal complaint against

27 Plaintiff Sherman alleging that he had violated the University's research integrity policy that was

28 later proven to be unsubstantiated.



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

35.    Upon information and belief, UCSC faculty also took action and made statements to interfere with Mr. Sherman's ability to obtain employment upon his graduation.  Plaintiff was interviewed for a position at Sandia National Laboratories by a UCSC Ph.D. alumni and continuing collaborator with UCSC's Engineering Department.  Plaintiff was rejected from Sandia and given the feedback that he had "failed to take responsibility for [his] role in creating problems with [his] previous supervisors."

In October 2019, approximately ten months after Mr. Sherman's report of his allegations against Professors Achlioptas and Sgourakis, the Title IX office informed Plaintiff that it was beginning an investigation into the failures by responsible employees to report conduct violating Title IX, including the conduct of Professor Sgourakis.

**Plaintiff Zayd Hammoudeh**

36.    In the Fall of 2017, Plaintiff Zayd Hammoudeh began the doctoral program in the University of California, Santa Cruz (UCSC) Department of Computer Science and Engineering with Professor Dimitris Achlioptas as his academic advisor.

37.    During his first year at UCSC, Mr. Hammoudeh excelled as a graduate student.  Plaintiff Hammoudeh was the top student in a number of his classes, maintained a 4.0 GPA, and won the award for best student paper at a prestigious conference.

38.    Throughout Plaintiff Hammoudeh's time at UCSC, Professor Achlioptas subjected Mr. Hammoudeh to a hostile environment that included demeaning comments about his race and religion, sexually-offensive remarks, and abusive and threatening conduct, that occurred on a regular and pervasive basis.

39.    On February 13, 2017, during the University's recruitment process, Professor Seshadhri Comandur and Professor Achlioptas invited Mr. Hammoudeh to an informal meeting at a local brewery to discuss his application.  After they met and Dr. Comandur left the meeting, Professor Achlioptas asked Mr. Hammoudeh whether he was religious.  When Plaintiff Hammoudeh, who is of mixed Palestinian descent replied, "Somewhat," Professor Achlioptas told Mr. Hammoudeh that he should tell people he is "militantly Islamic" and laugh to see how they react.  As Plaintiff Hammoudeh and Professor Achlioptas walked to their cars, Professor

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    Achlioptas told Plaintiff Hammoudeh that he owned a Porsche that he used to "pick up chicks"

2    and that Plaintiff would "cream his pants" if he had the opportunity to drive it.

3          40.    On March 17, 2017, Mr. Hammoudeh attended UCSC's open house for admitted

4    students.  That day, Professor Achlioptas referred to Mr. Hammoudeh, who had a beard, as a

5    "terrorist."  A few days later, on March 19, 2017, Professor Achlioptas sent an email to Mr.

6    Hammoudeh, and two other Ph.D. students, Konstantinos Zampetakis and Noujan Pashanasangi,

7    titled, "Team Terror."  In the email, sent from the Professor's UCSC email accounts, Professor

8    Achlioptas attached a photo of himself with Mr. Hammoudeh, Mr. Zampetakis and Mr.

9    Pashanasangi.  Both Konstantinos Zampetakis and Noujan Pashanasangi were Ph.D. students

10    studying with Professor Achlioptas.  As Professor Achlioptas knew, Mr. Pashanasangi is Iranian.

11          41.    On both occasions, Mr. Hammoudeh felt uncomfortable about Professor

12    Achlioptas' comments.  However, Plaintiff respected Professor Achlioptas' work and proceeded

13    to work with him in hopes that the behavior would end once they started to work together.

14          42.    During the week of graduate school orientation, Mr. Hammoudeh was in Professor

15    Achlioptas' office with Professor Sgourakis and two other students, Mr. Sherman and Mr.

16    Pashanasangi.  In front of Professor Sgourakis and the other students, Professor Achlioptas called

17    Mr. Hammoudeh and Mr. Pashanasangi "terrorists."  When Mr. Sherman asked Professor

18    Achlioptas if this was appropriate, he rolled his eyes and interrogated Mr. Sherman about the

19    definition of racism, then gave Mr. Sherman a hypothetical scenario about teaching math to a

20    Hungarian child and an African American child: "You have a gun to your head, and you are

21    presented with an African-American child and a Hungarian child. You will pick one of the two

22    children and they will take an exam in mathematics.  If the child fails, you will be shot, and if the

23    child passes you are safe. Which child do you chose?"

24          43.    Once Plaintiff began classes at UCSC and research with Professor Achlioptas as

25    his advisor, Professor Achlioptas referred to Mr. Hammoudeh as a "terrorist" on a routine basis,

26    sometimes as often as multiple times a day.  Professor Achlioptas would say, "Hey, Terrorist," as

27    an informal way of greeting Plaintiff, and call Mr. Hammoudeh other racial slurs, such as "carpet

28    salesman" and "Ay-rab," intentionally mispronouncing the word to give it an offensive meaning.

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

11
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  Professor Achlioptas would regularly comment on Mr. Hammoudeh's appearance and beard, and

2  once implied that faculty was afraid of Plaintiff because he was Muslim.

3      44.    Professor Achlioptas also regularly subjected Plaintiff Hammoudeh to gross,

4  sexually-charged remarks and inquiries.  Professor Achlioptas commented often about penis size,

5  routinely boasting "how big [his] dick is," but stating that Mr. Hammoudeh had a "tiny penis"

6  and that he wanted to give Plaintiff Hammoudeh a "penis transplant."  On one occasion,

7  Professor Achlioptas berated Mr. Hammoudeh's "very stupid idea," then pointed to a plastic

8  pushpin on a bulletin board and told Plaintiff, "This is the size of your penis."  Professor

9  Achlioptas also enjoyed telling Plaintiff Hammoudeh a joke about a penis growing out of a man's

10  forehead.

11      45.    On a number of occasions, Professor Achlioptas used sexually explicit and

12  suggestive comments, discussing personal sexual matters about and with Plaintiff.  Sometime

13  during the Winter 2018 quarter, while Plaintiff was talking to Professor Achlioptas in the car,

14  Professor Achlioptas transitioned the discussion to sex and asked Mr. Hammoudeh if he

15  performed oral sex on his wife.  Professor Achlioptas then described to Plaintiff the sexual acts

16  he engaged in with his wife and indicated that he really liked to give oral sex.  Professor

17  Achlioptas also once asked Plaintiff how much money it would take for him to "open-mouth kiss

18  a man" and expressed disbelief when Plaintiff would not do so for $50,000.  On another

19  occasion, Professor Achlioptas stated that Mr. Hammoudeh was an "incel," a phrase that

20  offended Plaintiff given its underlying religious and racial inferences.

21      46.    Professor Achlioptas also regularly called Plaintiff "autistic" and told Plaintiff he

22  had an "autistic brain."  Mr. Hammoudeh has never been tested or diagnosed with autism but

23  after being regularly degraded by Professor Achlioptas he began at times to believe it.  On a

24  regular basis, Professor Achlioptas also used abusive language, frequently calling Mr.

25  Hammoudeh "motherfucker," "moron," "idiot," "loser," and "incompetent," and often repeatedly

26  stating to Mr. Hammoudeh "fuck you" and "shut the fuck up."

27      47.    On October 29, 2017, after being at UCSC for approximately one month, Mr.

28  Hammoudeh considered sending Professor Achlioptas an email regarding his behavior.  Professor

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   Achlioptas had berated Plaintiff earlier that day.  Mr. Hammoudeh decided not to send the email

2   because Professor Achlioptas had significant power over the success of his academic future and

3   career so he feared it would negatively impact their professional relationship.

4           48.    On January 31, 2018, Mr. Hammoudeh did send an email to Professor Achlioptas,

5   explaining that his "berating and yelling" deeply affects him.  He further discussed the impact of

6   Professor Achlioptas' conduct, stating that, "he thinks about it in the hours and days to follow,

7   and gets very depressed afterwards."  Professor Achlioptas disregarded Plaintiff's depression as

8   "the cry of [his] shrinking ego," and further embarrassed Mr. Hammoudeh by asking Plaintiff to

9   read the contents of his email out loud in his office to another student, Benjamin Sherman.  When

10  Mr. Hammoudeh complied, he felt humiliated, as Professor Achlioptas took pride in it.

11          49.    Over the next four weeks, Professor Achlioptas' abuse escalated even further.  Mr.

12  Hammoudeh worked around the clock to produce results on a paper as Professor Achlioptas

13  frequently yelled and called Plaintiff an "idiot," "dumb," and "loser."  After Plaintiff spent

14  countless hours creating a tool for this research, Professor Achlioptas proclaimed he was naming

15  the tool, "PUSS," to "mess" with Plaintiff.  Professor Achlioptas sent the name by email with a

16  link to Urban Dictionary that explained that the term means "½ pussy, ½ wuss."  Plaintiff

17  Hammoudeh had labored for hours developing this tool, and won an award for this paper, but

18  Professor Achlioptas' conduct continued to make him feel humiliated, degraded and depressed.

19          50.    Professor Achlioptas' extreme harassment based on sex, race, religion and

20  national origin continued during the time when Plaintiff Hammoudeh worked as an employee for

21  the University.  As an employee, Professor Achlioptas additionally compensated his graduate

22  students by applying a pecking order based on race/ color, or national origin.  Professor

23  Achlioptas treated Plaintiff Hammoudeh less favorably than students who were White, and

24  Professor Achlioptas, himself of Greek descent, treated both Plaintiffs less favorably than his

25  students of Greek descent.  Professor Achlioptas paid Mr. Zampetakis, a graduate student of

26  Greek origin, the highest compensation, and then paid plaintiff Sherman a substantially lower

27  compensation, and then paid Plaintiff Hammoudeh the least compensation, for substantially the

28  same or even more work.  Professor Achlioptas paid Mr. Zampetakis almost fifty percent more

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

13
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  than Mr. Hammoudeh, even though Mr. Zampetakis did not have a master's degree or any

2  publications while Mr. Hammoudeh had two master's degrees and more than two publications.

3      51.    Professor Achlioptas continued to make comments about Plaintiff's race, religion,

4  and sex life even though he knew the comments offended Plaintiff.  Professor Achlioptas

5  repeatedly discussed a "most-wanted" terrorist poster that he saw in the Frankfurt airport, and

6  told faculty member Nikolas Sgourakis, in front of Plaintiff, that the individual in the poster

7  looked "exactly" like Mr. Hammoudeh.  Professor Achlioptas also called Mr. Hammoudeh a

8  "terrorist" in front of Professor Kolaitis and Graduate Computer Science Program Director Alex

9  Pang.  On one occasion, Professor Achlioptas told Plaintiff that he knew the terrorist comments

10  bothered Mr. Hammoudeh but that he really enjoyed making them.  Professor Achlioptas'

11  proposed solution was to allow Plaintiff to call him a racial slur (Professor Achlioptas proposed

12  "goat fucker") so that he could continue to call Plaintiff a terrorist.

13      52.    On or around May 4, 2018, Professor Achlioptas invited Mr. Hammoudeh to a

14  party at Professor Achlioptas house for his son's birthday.  When Mr. Hammoudeh and his wife

15  arrived, Professor Achlioptas greeted them wearing only a towel, with his upper chest bare.  At

16  least twice during the party, Professor Achlioptas interrupted Mr. Hammoudeh's conversations

17  with guests at the party to call Mr. Hammoudeh a terrorist in front of the individuals and

18  comment on Plaintiff's appearance and beard.  At one point, Professor Achlioptas asked

19  Plaintiff's wife, "Why did you marry [Zayd]?"  Plaintiff did not find the question problematic,

20  and recalled that his wife said, "I think he's a good person and he makes me laugh."  In response,

21  Professor Achlioptas asked, "When you see Zayd naked, does it make you laugh?"  Plaintiff's

22  wife was shocked by the comment.

23      53.    At the end of May, Mr. Hammoudeh worked with Professor Achlioptas to prepare

24  a talk about his research.  Professor Achlioptas repeatedly called Plaintiff "autistic" and forced

25  Plaintiff to memorize and read a script that he had written word-for-word.  Mr. Hammoudeh felt

26  humiliated by the experience and realized that his professional relationship with Professor

27  Achlioptas was not going to work and the only solution was to leave.  On May 24, 2018, Mr.

28  Hammoudeh reached out to the Ph.D. program at the University of Oregon.

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612

T: (510) 452-5000
F: (510) 452-5004

14

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

54.    On June 11, 2018, Plaintiff sent an email to Professor Achlioptas stating that his abusive conduct must immediately cease. In the email, Mr. Hammoudeh stated that, "Comments about my race, religion, perceived 'autism,' appearance, etc., are not appropriate and cannot occur again in any form." When Plaintiff and Professor Achlioptas met to discuss the email, Professor Achlioptas attempted to normalize his comments by saying that he refers to a group of Iranian students who eat lunch in the breakroom every day as "terrorists" as well. During the conversation, Professor Achlioptas again used the term "Ay-rab." Professor Achlioptas asked Plaintiff to retract his email, not because the statements were not true, but because the email could "ruin [his] career."

55.    Although Mr. Hammoudeh had complained directly to Professor Achlioptas about his mistreatment on multiple occasions, the conduct persisted against Plaintiff as well as other students, further creating a hostile and abusive environment for Mr. Hammoudeh. A number of faculty members had witnessed Professor Achlioptas' mistreatment of Plaintiff but failed to take any steps to remedy the abuse or report it, despite their obligations under University of California (UC) policy to do so, further disheartening Plaintiff.[1] In August 2018, Mr. Hammoudeh took a leave of absence from the University.

**Plaintiff Hammoudeh Formally Complains, Asks Defendant to Protect Plaintiff Sherman and Other Students**

56.    With no end to the abuse in sight, Plaintiff Hammoudeh made the difficult decision to file a complaint against Professor Achlioptas and take a leave of absence from UCSC with the hope that he might return if Defendant took appropriate actions to protect himself and other students, including his friend and fellow graduate student Plaintiff Sherman. On August 28, 2018, Mr. Hammoudeh sent a complaint about Professor Achlioptas to the Dean of UCSC's Baskin School of Engineering, Alexander Wolf, copying the chairs of the computer science and engineering departments, the Office of Diversity Equity and Inclusion (ODEI), and his union

---

[1] The UC Sexual Violence Sexual Harassment Policy makes clear that faculty members, managers and supervisors, including Deans and Department Chairs, must promptly notify the Title IX officer or designee if they learn that a student may have experienced conduct prohibited under the policy.



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    representative.  The complaint provided numerous examples of Professor Achlioptas' abusive

2    race- and sex-based conduct and specifically complained about Professor Achlioptas'

3    inappropriate and abusive behavior towards Plaintiff Sherman.  The complaint detailed some of

4    Professor Achlioptas' most despicable behavior, including calling Plaintiff Hammoudeh a

5    "terrorist," an "Ay-rab," "autistic," an "incel," and complained of vile, wholly inappropriate

6    references by Professor Achlioptas to his own and to Plaintiff Hammoudeh's genitalia.  The

7    complaint also named faculty members, including Professor Sgourakis and Professor Kolatis,

8    who had witnessed and were aware of Professor Achlioptas' misconduct, but had not reported nor

9    stopped it.  Importantly, Plaintiff Hammoudeh's complaint also recited specific abuse against

10   Plaintiff Sherman, and implored UCSC to act to protect him and its students: "I hope the

11   university administration takes this matter seriously so no one in the future suffers as I did."

12        57.    On August 31, 2018, Mr. Hammoudeh met with the Title IX office.  During the

13   informal meeting, the Title IX Office said it would coordinate with other offices to determine

14   next steps.  But the Title IX Office did not follow UC policies requiring an "immediate

15   assessment concerning the health and safety of the complainant and the campus community" and

16   consideration of "interim measures as appropriate to ensure the safety, well-being, and equal

17   access to University programs and activities of its students and employees."  Although Mr.

18   Hammoudeh had informed UCSC of Professor Achlioptas' conduct towards Mr. Sherman, and

19   the names of faculty members who had observed the mistreatment, no one from the University

20   contacted Mr. Sherman or the faculty members.  Mr. Hammoudeh also never received a written

21   explanation of his rights and available options as required by UC policies.

22        58.    That same day, Mr. Hammoudeh's request for a meeting with the chair of the

23   computer science and engineering department was denied due to "formal policy."  Mr.

24   Hammoudeh was not provided information about the formal policy or a reason why such a

25   meeting would violate the policy.

26        59.    On September 5, 2018, Mr. Hammoudeh met with the Dean of Baskin School of

27   Engineering Alexander Wolf.  During the meeting, Dean Wolf listened to Mr. Hammoudeh's

28   concerns and said he believed Plaintiff was "credible."  He further referred to Professor

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

16

1    Achlioptas' attempts to manipulate and mislead Mr. Hammoudeh as "gaslighting."  Mr.

2    Hammoudeh repeatedly asked Dean Wolf to "please check in on Mr. Sherman to make sure he is

3    ok."  Plaintiff Hammoudeh also informed another University leader, CSE Department Chair

4    Schlag, of his concerns about Mr. Sherman and another graduate student, Mr. Kostas, regarding

5    Professor Achlioptas' treatment towards them.  Although Dean Wolf had the authority to

6    immediately pursue an investigation and other measures against Professor Achlioptas, neither he

7    nor Chair Schlag took further actions after this meeting to respond to Mr. Hammoudeh's

8    concerns about Mr. Sherman's well-being or his allegations against Professor Achlioptas.

9         60.    After Mr. Hammoudeh informed UCSC in writing about sex and race-based abuse

10   against him and Mr. Sherman, and met with both the Title IX office and Dean Wolf, UCSC took

11   no action to investigate his claims or protect the health and safety of him or Mr. Sherman for

12   months.  UCSC did not interview any witnesses to Professor Achlioptas' conduct, did not make

13   any effort to prevent further abuse by him, and misinformed Mr. Hammoudeh about his rights

14   and UCSC's investigations into his complaints.  These actions enabled Professor Achlioptas to

15   continue his abuse and cause harm, particularly against Mr. Sherman, and inexcusably delayed

16   investigation and disciplinary action against Professor Achlioptas.

17        61.    Over the next several months, Mr. Hammoudeh's attempts to follow up on his

18   complaint and to seek an investigation were met with further delay and no responsiveness on the

19   part of the University.  In late September, after several weeks had passed without any further

20   contact from the Title IX office, Mr. Hammoudeh reached out to Cherie Scricca and learned that

21   the Dean of Students office would be leading a process to address the vast majority of his

22   allegations.

23        62.    In early October, Mr. Hammoudeh spoke with Dean of Students Garrett Naiman

24   and Assistant Vice Chancellor Lucy Rojas.  During these conversations, Mr. Naiman and Ms.

25   Rojas promised that the University would pursue a third-party investigation into Mr.

26   Hammoudeh's allegations.  They asked Mr. Hammoudeh to file yet another complaint through

27   the student grievance process.  Once Mr. Hammoudeh did so, Ms. Rojas informed Plaintiff, in

28   letters dated December 16 and December 18, 2018, that his allegations and requested remedies

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

17
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  would be referred instead to the Formal Complaint process under the Faculty Conduct and the

2  Administration of Discipline process (Faculty Discipline Process).  There was no further

3  discussion about an investigation into Mr. Hammoudeh's allegations.

4      63.    As described above, in mid-December, when the University still had not taken any

5  steps to remedy Professor Achlioptas' harassment, Mr. Sherman met with Dean Wolf and the

6  Title IX office to report his concerns about Professor Achlioptas' conduct.  UCSC only then

7  placed Professor Achlioptas on paid involuntary leave for conduct which might be in violation of

8  the UC Faculty Code of Conduct.  This interim measure occurred nearly four months after Mr.

9  Hammoudeh's initial complaint to UCSC.

10     64.    On December 16, 2018, Mr. Hammoudeh contacted the Title IX office again,

11  continuing to seek an investigation.

12     65.    During this time, Mr. Hammoudeh had requested that Professor Achlioptas cease

13  any further contact with him.  When Professor Achlioptas contacted Plaintiff again, in spite of

14  Plaintiff's request, Mr. Hammoudeh asked the University to direct Professor Achlioptas not to

15  contact him.  The University claimed it had issued such a directive, but its investigation found

16  one was never issued.  On December 20, 2019, when Professor Achlioptas attempted to contact

17  Plaintiff once again, Mr. Hammoudeh immediately informed Dean Wolf and the University of

18  this violation. He received no response from the University until January 17, 2019 when Dean

19  Wolf attempted to assure Plaintiff that, "[T]he appropriate follow up was taken in a timely

20  manner."  Despite Mr. Hammoudeh's request for a more effective measure, Dean Wolf provided

21  no further information regarding the actions that were taken to address Professor Achlioptas'

22  violation.

23     66.    On February 4, 2019, the University informed Mr. Hammoudeh through a letter

24  from campus counsel Lorena Peñaloza of the status of his request for an investigation.  Without

25  explanation, the letter stated that Mr. Hammoudeh's allegations did not meet the prima facie

26  requirement for a violation of SVSH policy and therefore would not be investigated through the

27  Title IX process but instead through the faculty discipline process.

28     67.    In February 2019, the University commenced an investigation into Mr. Sherman's



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   Title IX allegations, as well as concurrent investigations into Mr. Hammoudeh's and Mr.

2   Sherman's faculty code-of-conduct (FCC) allegations.  As part of the investigative process, Mr.

3   Hammoudeh testified on March 25 and April 17, 2019, providing evidence of at least 23

4   instances in which Professor Achlioptas violated Title IX and the SVSH policy.  During this

5   process, Mr. Hammoudeh asked the Title IX office to reevaluate its initial assessment of his Title

6   IX/SVSH allegations.

7       68.     On June 21, 2019, the Title IX office reversed its earlier prima facie

8   determination.  Upon reviewing Mr. Hammoudeh's information, the Title IX officer Isabel Dees

9   concluded that the allegations, if true, would constitute misconduct under the SVSH policy.  In

10  making this new determination, Ms. Dees claimed that it was her understanding that Mr.

11  Hammoudeh did not want to be a complainant in a Title IX investigation even though Plaintiff

12  had made repeated requests for an investigation since August 2018.  Ms. Dees offered to meet

13  with Mr. Hammoudeh to discuss his rights, options, and resources, to which he agreed, but she

14  never scheduled a meeting.

15      69.     In July 2019, the Title IX office concluded its investigation of Mr. Sherman's

16  Title IX allegations, finding sufficient evidence to substantiate a Title IX violation.  Based on the

17  Title IX report, and input provided by both Mr. Sherman and Professor Achlioptas, on September

18  19, 2019, Interim Campus Provost and Executive Vice Chancellor Lori Kletzer initiated

19  disciplinary action against Professor Achlioptas.

20      70.     As a complainant under the faculty discipline process, Mr. Hammoudeh was

21  afforded far fewer rights than those afforded to complainants during the Title IX process.  For

22  example, the University provides Title IX complainants with a full report of the investigation as

23  well as an opportunity to meet with and provide input to University administrators at the close of

24  the investigation.  To this day, Mr. Hammoudeh has yet to be informed of the findings or

25  outcome of the FCC investigation.

26      71.     On October 3, 2019, after a lengthy process lasting more than fourteen months

27  from Plaintiff's initial complaint to UCSC, the UC Systemwide Title IX office filed notice of its

28  intent to initiate an investigation into Mr. Hammoudeh's Title IX allegations against Professor

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612

T: (510) 452-5000
F: (510) 452-5004

19
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    Achlioptas.

2        72.    Following the University's initiation of disciplinary proceedings, Professor

3    Achlioptas attempted to contact Mr. Hammoudeh and his wife both directly and through a third

4    party, UCSC Professor Manfred K. Warmuth.  Mr. Hammoudeh had maintained a relationship

5    with Professor Warmuth in the hopes that he might one day return to UCSC.  From July 2019 to

6    September 2019, UCSC Professor Warmuth contacted Mr. Hammoudeh over email, Skype, and

7    phone on at least seven occasions in a manner that made Mr. Hammoudeh feel intimidated and

8    pressured to drop the complaint.  At Mr. Hammoudeh's request, on October 11, 2017, the Title

9    IX office issued mutual no contact directives prohibiting contact between Plaintiff, Professor

10    Achlioptas, and Professor Warmuth.

11        73.    Despite this directive, Professor Achlioptas' attempts to contact Plaintiff

12    continued.  On November 1, 2019, Professor Achlioptas visited Sara Alladin, Mr. Hammoudeh's

13    wife, at San Jose State University, her place of work.  Professor Achlioptas walked around Ms.

14    Alladin's department, entered her research lab despite a sign that read "authorized personnel

15    only," asked about the location of Ms. Alladin's seminar, and then knocked on Ms. Alladin's

16    classroom door in an attempt to talk to her.  On December 1, 2019, ICP/EVC Kletzer issued a

17    Letter of Admonition warning Professor Achlioptas that a subsequent failure to comply with the

18    no contact directive may create independent grounds for disciplinary action.

19        74.    As a result of Professor Achlioptas' harassment and the University's deliberate

20    indifference, Plaintiff Hammoudeh was deprived of an academic environment free from racial

21    hostility and harassment.  He was forced to take a leave of absence from UCSC's Ph.D. program

22    because he feared any further contact with Professor Achlioptas would result in additional

23    harassment.  Mr. Hammoudeh has been and will continue to be disadvantaged in his academic

24    standing and future employment prospects.

**FIRST CAUSE OF ACTION**
(Violation of Title IX)
(20 U.S.C. § 1681, *et seq*.)
(The University's Deliberate Indifference to Alleged Sexual Harassment)
(Plaintiffs Sherman and Hammoudeh)

75.    Plaintiffs Sherman and Hammoudeh re-allege and incorporate herein by reference



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612

T: (510) 452-5000
F: (510) 452-5004

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

the allegations in paragraphs 1 through 74 above as though fully set forth herein.

76.     Title IX provides that, "No person in the Unites States, shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

77.     A recipient of Federal financial assistance intentionally violates Title IX's prohibition against sex discrimination when it is "deliberately indifferent" to known acts of teacher-student harassment.

78.     At all relevant times, the University received Federal financial assistance.

79.     Plaintiffs Sherman and Hammoudeh were subjected to sexual harassment that was so severe, pervasive, and/or offensive that it created a hostile, intimidating, and/or abusive environment that deprived Plaintiffs of the benefits and education opportunities available at the University.  Professor Achlioptas' repeated harassment of Plaintiffs, included *inter alia,* the routine use of sexually-charged comments, inappropriate inquiries into Plaintiffs' sex lives, as well as abusive and threatening conduct on a near daily basis.  Reasonable persons would have perceived this environment as hostile and abusive, and Plaintiffs did perceive it as such.  As a result of Professor Achlioptas' harassment and the University's deliberate indifference, Plaintiffs have been and will continue to be disadvantaged in their academic standing and future employment prospects.

80.     Defendants had actual knowledge of the harassment endured by Plaintiffs as a result of the numerous complaints that Plaintiffs made, *inter alia*, to Professor Achlioptas, other faculty members, the Dean, the Title IX office, the union, and other UCSC administrators.

81.     The harassment occurred in a context that was subject to the Defendants' control and in which Defendants could have taken remedial action.

82.     Defendants' response to the harassment and/or its lack of response, *inter alia* by failing to promptly investigate the harassment or take any measures to protect Plaintiffs and/or end the harassment, was deliberately indifferent insofar as it was clearly unreasonable in light of the known circumstances.

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

21
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

83.     Plaintiffs suffered and will continue to suffer damages and injuries, including but not limited to, past and future lost wages, benefits of employment, character and standing in their community, and other special and/or incidental damages and prejudgment interest, as a direct and proximate result of Defendants' unlawful actions.

84.     Plaintiffs suffered and will continue to suffer emotional and physical distress including but not limited to humiliation, mental anguish, loss of enjoyment of life, and medical expenses, as a further direct and proximate result of the unlawful actions committed by Defendants as described herein.

85.     Plaintiffs were required to hire lawyers and incur attorneys' fees and costs, as a further direct and proximate result of the unlawful actions committed by Defendants as described herein.

WHEREFORE, Plaintiffs Sherman and Hammoudeh request that judgment be entered in their favor and against Defendants as herein set forth.

## SECOND CAUSE OF ACTION
(Violation of Title IX)
(20 U.S.C. 1681, *et seq.*)
(Retaliation)
(Plaintiff Sherman)

86.     Plaintiff Sherman realleges and incorporates herein by reference the allegations in paragraphs 1 through 85 as though fully set forth herein.

87.     It is intentional discrimination, in violation of Title IX, to retaliate against an individual because of his or her complaint of sex discrimination.

88.     Plaintiff engaged in protected activity by a filing a formal written complaint alleging harassment with the Title IX office and participating in the investigation of the allegations.

89.     Defendants knew that Plaintiff was engaging in the protected activity.

90.     Defendants unlawfully retaliated against Plaintiff in violation of Title IX by making false, offensive statements about Plaintiff's mental health, withholding Plaintiff's authorship of his research publication, withholding approval of credit for his research, delaying the process for completing his master's program, and interfering with his employment prospects.



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

91.     Plaintiff's protected activity of reporting harassment and participating in the Title IX investigation was a motivating factor in Defendants' decision to engage in the adverse school related actions as set forth herein.

92.     Plaintiff suffered and will continue to suffer damages and injuries, including but not limited to, past and future lost wages, benefits of employment, character and standing in their community, and other special and/or incidental damages and prejudgment interest, as a direct and proximate result of Defendants' unlawful actions.

93.     Plaintiff suffered and will continue to suffer emotional and physical distress including but not limited to humiliation, mental anguish, loss of enjoyment of life, and medical expenses, as a further direct and proximate result of the unlawful actions committed by Defendants as described herein.

94.     Plaintiff was required to hire lawyers and incur attorneys' fees and costs, as a further direct and proximate result of the unlawful actions committed by Defendants as described herein.

WHEREFORE, Plaintiff Sherman requests that judgment be entered in his favor and against Defendants as hereinafter set forth.

### THIRD CAUSE OF ACTION
(Violation of Title VI)
(42 U.S.C. § 2000d, et seq.)
(The University's Deliberate Indifference to Alleged Harassment
Based on Race and National Origin)
(Plaintiff Hammoudeh)

95.     Plaintiff Hammoudeh re-alleges and incorporates herein by reference the allegations in paragraphs 1 through 94 above as though fully set forth herein.

96.     Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin. 42 U.S.C. § 2000d.

97.     In the educational setting, a recipient of federal funds is liable for intentional discrimination when it has been "deliberately indifferent" to teacher harassment of a student.

98.     At all relevant times, the University received federal funding and assistance.

99.     Defendants subjected Plaintiff Hammoudeh to a hostile environment based on his

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612

T: (510) 452-5000
F: (510) 452-5004

23

1  race and/or national origin.  Professor Achlioptas' verbal race- and/or national origin-based

2  harassment of Plaintiff, which included *inter alia*, routinely calling Plaintiff a "terrorist,"

3  mocking Plaintiff's appearance, beard, and food restrictions, telling Plaintiff on a number of

4  occasions that he looked like the "most-wanted" terrorist poster, calling Plaintiff other derogatory

5  terms, including "Ay-rab," "carpet salesman," and "boy," and treating Plaintiff less favorably

6  because of his race and/or national origin, was so severe, pervasive, and/or offensive that it

7  created a degrading, intimidating, and/or abusive environment that deprived Plaintiff of the

8  benefits and education opportunities available at the University.  The harassment occurred in

9  front of other faculty members who failed to report or take any action to end the abuse thereby

10  tacitly approving it.  A reasonable person would have perceived this environment as hostile and

11  abusive, and Plaintiff did perceive it as such.  As a result of Professor Achlioptas' harassment and

12  the University's deliberate indifference, Plaintiff Hammoudeh was deprived of an academic

13  environment free from racial hostility and harassment.  Plaintiff Hammoudeh has been and will

14  continue to be disadvantaged in his academic standing and future employment prospects.

15      100.  Defendants had actual knowledge of the race- and/or national origin-based

16  harassment endured by Plaintiff Hammoudeh as a result of the numerous complaints that Plaintiff

17  made, *inter alia*, to Professor Achlioptas, other faculty members, the Dean, the Title IX office,

18  the union, and other UCSC administrators.

19      101.  The harassment occurred in a context that was subject to the Defendants' control

20  and in which Defendants could have taken remedial action.

21      102.  Defendants' response to the harassment and/or its lack of response, *inter alia* by

22  failing to promptly investigate the harassment or take any measures to protect Plaintiffs and/or

23  end the harassment, was deliberately indifferent insofar as it was clearly unreasonable in light of

24  the known circumstances.

25      103.  Plaintiff suffered and will continue to suffer emotional and physical distress

26  including but not limited to humiliation, mental anguish, loss of enjoyment of life, and medical

27  expenses, as a further direct and proximate result of the unlawful actions committed by

28  Defendants as described herein.

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

24
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

104.    Plaintiff was required to hire lawyers and incur attorneys' fees and costs, as a further direct and proximate result of the unlawful actions committed by Defendants as described herein.

WHEREFORE, Plaintiff Hammoudeh requests that judgment be entered in his favor and against Defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION
(Racial, Religious, and/or National Origin-Based Harassment – Hostile Work Environment in Violation of California Fair Employment and Housing Act)
(Gov't Code Section § 12940(j) and (k))
(Plaintiff Hammoudeh)

105.    Plaintiff Hammoudeh re-alleges and incorporates herein by reference the allegations in paragraphs 1 through 104 above as though fully set forth herein.

106.    Plaintiff Hammoudeh was an employee within the meaning of Government Code Section § 12940.

107.    The University of California, Santa Cruz, is an employer within the meaning of Government Code Section § 12940 in that it regularly employs five or more employees.

108.    Plaintiff Hammoudeh is a member of a protected class in that he is Muslim and Palestinian descent.

109.    Defendants subjected Plaintiff Hammoudeh to a hostile environment based on his race, religion, and/or national origin.  Professor Achlioptas' verbal race-, religion, and/or national origin based harassment of Plaintiff, which included *inter alia*, routinely calling Plaintiff a "terrorist," mocking Plaintiff's appearance, beard, and food restrictions, telling Plaintiff on a number of occasions that he looked like the "most-wanted" terrorist poster, calling Plaintiff other derogatory terms, including "Ay-rab," "carpet salesman," and "boy," and treating Plaintiff less favorably because of his race and/or national origin, was so severe, pervasive, and/or offensive that it created a degrading, intimidating, and/or abusive environment, and altered the conditions of Plaintiff's employment, forcing Plaintiff to withdraw early from his employment with and enrollment in UCSC's Ph.D. program.  The harassment occurred in front of other faculty members who failed to report or take any action to end the abuse thereby tacitly approving it.  A reasonable person would have perceived this environment as hostile and abusive, and Plaintiff



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612

T: (510) 452-5000
F: (510) 452-5004

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    did perceive it as such.

2        110.    Defendants, faculty members and UCSC administrators knew or should have

3    known of the harassment based on race, religion, and/or national origin but failed to take

4    immediate and appropriate corrective action that was reasonably calculated to end the harassment

5    and to deter future harassment.  Defendants failed to take all reasonable steps to protect Plaintiff

6    and prevent future harassment from occurring causing Plaintiff additional emotional distress and

7    damages.

8        111.    Plaintiff suffered and will continue to suffer damages and injuries, including but

9    not limited to, past and future lost wages, benefits of employment, character and standing in their

10    community, and other special and/or incidental damages and prejudgment interest, as a direct and

11    proximate result of Defendants' unlawful actions.

12        112.    Plaintiff suffered and will continue to suffer emotional and physical distress

13    including but not limited to humiliation, mental anguish, loss of enjoyment of life, and medical

14    expenses, as a further direct and proximate result of the unlawful actions committed by

15    Defendants as described herein.

16        113.    Plaintiff was required to hire lawyers and incur attorneys' fees and costs, as a

17    further direct and proximate result of the unlawful actions committed by Defendants as described

18    herein.

19        WHEREFORE, Plaintiff Hammoudeh requests that judgment be entered in his favor and

20    against Defendants as herein set forth.

21                    **FIFTH CAUSE OF ACTION**
                (Discrimination Based on National Origin)
22              (Violation of Cal. Gov. Code § 12900 *et seq.*)
23                (Plaintiffs Sherman and Hammoudeh)

24        114.    Plaintiffs Sherman and Hammoudeh re-allege and incorporate herein by reference

25    the allegations in paragraphs 1 through 113 above as though fully set forth herein.

26        115.    Plaintiff Hammoudeh was an employee within the meaning of Government Code

27    Section § 12940.

28        116.    Plaintiff Sherman was an employee within the meaning of Government Code



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612

T: (510) 452-5000
F: (510) 452-5004

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  Section § 12940.

2      117.    The University of California, Santa Cruz, is an employer within the meaning of

3  Government Code Section § 12940 in that it regularly employs five or more employees.

4      118.    Defendants unlawfully discriminated against Plaintiffs because of their race,

5  religion, and/or national origin, in violation of Government Code Section § 12940 *et seq.*  During

6  their employment, Plaintiffs were paid less and treated less favorably in the terms and conditions

7  of their employment than colleagues were given preferential treatment because of their national

8  origin.

9      119.    Plaintiffs suffered and will continue to suffer damages and injuries, including but

10  not limited to, past and future lost wages, benefits of employment, character and standing in their

11  community, and other special and/or incidental damages and prejudgment interest, as a direct and

12  proximate result of Defendants' unlawful actions.

13      120.    Plaintiffs suffered and will continue to suffer emotional and physical distress

14  including but not limited to humiliation, mental anguish, loss of enjoyment of life, and medical

15  expenses, as a further direct and proximate result of the unlawful actions committed by

16  Defendants as described herein.

17      121.    Plaintiffs were required to hire lawyers and incur attorneys' fees and costs, as a

18  further direct and proximate result of the unlawful actions committed by Defendants as described

19  herein.

20      WHEREFORE, Plaintiffs Sherman and Hammoudeh request that judgment be entered in

21  their favor and against Defendants as herein set forth.

22  ## SIXTH CAUSE OF ACTION
(Violation of Unruh Civil Rights Act)

23  (Cal. Civ. Code § 51 *et seq.*)

24  (Plaintiffs Sherman and Hammoudeh)

25      122.    Plaintiffs Sherman and Hammoudeh re-allege and incorporate herein by reference

26  the allegations in paragraphs 1 through 121 above as though fully set forth herein.

27      123.    At all times relevant herein, Defendants were a business subject to the Unruh Civil

28  Rights Act.



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

124.    Defendants intentionally discriminated against Plaintiffs Sherman and Hammoudeh because of their sex, and discriminated against Plaintiff Hammoudeh because of his race, religion, and national origin, as those terms are defined in Cal. Civ. Code § 51.

125.    Defendants inadequately responded to Plaintiff Sherman and Hammoudeh's complaints of sexual harassment by Professor Achlioptas, and Plaintiff Hammoudeh's complaints that Professor Achlioptas harassed him because of his race, religion, and national origin.  The harassment, and defendants' failure to adequately respond to the harassment, denied Plaintiffs the benefits of and privileges the education provided by Defendants' business establishment.

126.    As a proximate result of the wrongful conduct described above, Plaintiffs Sherman and Hammoudeh were forced to expend legal fees and costs in an effort to obtain a remedy for Defendants' unlawful conduct.

WHEREFORE, Plaintiffs Sherman and Hammoudeh request that judgment be entered in their favor and against Defendants as herein set forth.

### SEVENTH CAUSE OF ACTION
(Discrimination In Education)
(Violation of Cal. Ed. Code §§ 220 and 66270 *et seq.*)
(Plaintiffs Sherman and Hammoudeh)

127.    Plaintiffs Sherman and Hammoudeh re-allege and incorporate herein by reference the allegations in paragraphs 1 through 126 above as though fully set forth herein.

128.    Defendants are an educational institution as defined in California Education Code § 66270.

129.    Plaintiff Sherman was an employee within the meaning of Government Code Section § 12940.

130.    Plaintiffs Sherman and Hammoudeh were subjected to sexual harassment that was so severe, pervasive, and/or offensive that it created a hostile, intimidating, and/or abusive environment that deprived Plaintiffs of the benefits and education opportunities available at the University.  Plaintiff Hammoudeh was subjected to further harassment because of his race, national origin, and religion, as described above.  Professor Achlioptas' repeated harassment of Plaintiffs, included *inter alia,* the routine use of sexually-charged comments, inappropriate inquiries into Plaintiffs' sex lives, and derogatory comments referencing Plaintiff Hammoudeh's

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    race, religion, and national origin, as well as abusive and threatening conduct on a near daily

2    basis.  Reasonable persons would have perceived this environment as hostile and abusive, and

3    Plaintiffs did perceive it as such.  As a result of Professor Achlioptas' harassment and the

4    University's deliberate indifference, Plaintiffs have been and will continue to be disadvantaged in

5    their academic standing and future employment prospects.

6        131.    Defendants had actual knowledge of the harassment endured by Plaintiffs as a

7    result of the numerous complaints that Plaintiffs made, *inter alia*, to Professor Achlioptas, other

8    faculty members, the Dean, the Title IX office, the union, and other UCSC administrators.

9        132.    The harassment occurred in a context that was subject to the Defendants' control

10   and in which Defendants could have taken remedial action.

11       133.    Defendants' response to the harassment and/or its lack of response, *inter alia* by

12   failing to promptly investigate the harassment or take any measures to protect Plaintiffs and/or

13   end the harassment, was deliberately indifferent insofar as it was clearly unreasonable in light of

14   the known circumstances.

15       134.    Plaintiffs suffered and will continue to suffer damages and injuries, including but

16   not limited to, past and future lost wages, benefits of employment, character and standing in their

17   community, and other special and/or incidental damages and prejudgment interest, as a direct and

18   proximate result of Defendants' unlawful actions.

19       135.    Plaintiffs suffered and will continue to suffer emotional and physical distress

20   including but not limited to humiliation, mental anguish, loss of enjoyment of life, and medical

21   expenses, as a further direct and proximate result of the unlawful actions committed by

22   Defendants as described herein.

23       136.    Plaintiffs were required to hire lawyers and incur attorneys' fees and costs, as a

24   further direct and proximate result of the unlawful actions committed by Defendants as described

25   herein.

26       WHEREFORE, Plaintiffs Sherman and Hammoudeh request that judgment be entered in

27   their favor and against Defendants as herein set forth.

28   //



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

*1939 Harrison Street*
*Suite 307*
*Oakland, CA 94612*
*T: (510) 452-5000*
*F: (510) 452-5004*

29

1

**REQUEST FOR RELIEF**

2    Plaintiffs Sherman and Hammoudeh request relief as follows:

3    a.    For special damages, including wages and benefits of employment, and other

4          economic and incidental damages, past and future, according to proof;

5    b.    For general damages, including pain, suffering, mental injury, and emotional

6          distress, past and future, according to proof;

7    c.    For reasonable attorneys' fees and costs of suit;

8    d.    For prejudgment interest and post judgment interest where warranted; and

9    e.    For such other and further relief, in law or equity, as this Court may deem

10          appropriate and just.

11

DATED:   July 17, 2020                    SIEGEL LEWITTER MALKANI

12

13                                        By: _____

14                                           Jonathan H. Siegel
                                              Latika Malkani
15                                           Laura Herron Webber
                                           *Attorneys for Plaintiffs Benjamin Sherman*
16                                           *and Zayd Hammoudeh*

17

18

19

20

21

22

23

24

25

26

27

SIEGEL
LEWITTER
MALKANI    28
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

30

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

July 17, 2019

RE:  **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 201907-06838815
Right to Sue: Sherman / University of California, Santa Cruz et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

July 17, 2019

Benjamin Sherman
822 N. Branciforte Ave.
Santa Cruz, California 95062

RE:  **Notice of Case Closure and Right to Sue**
     DFEH Matter Number: 201907-06838815
     Right to Sue: Sherman / University of California, Santa Cruz et al.

Dear Benjamin Sherman,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective July 17, 2019 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Benjamin Sherman                                    DFEH No. 201907-06838815

                        Complainant,

vs.

University of California, Santa Cruz
1156 High Street
Santa Cruz, California 95064

Dimitris Achlioptas

,

Nikolaos Sgourakis

,

                        Respondents
_____

1. Respondent **University of California, Santa Cruz** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Benjamin Sherman**, resides in the City of **Santa Cruz** State of **California.**

3. Complainant alleges that on or about **September 28, 2018**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's disability (physical or mental), sexual harassment- hostile environment.

**Complainant was discriminated against** because of complainant's national origin (includes language restrictions), disability (physical or mental), sexual harassment-hostile environment and as a result of the discrimination was forced to quit.

-1-
*Complaint – DFEH No. 201907-06838815*

Date Filed: July 17, 2019

1   **Complainant experienced retaliation** because complainant reported or resisted
2   any form of discrimination or harassment and as a result was forced to quit.

3   **Additional Complaint Details:** I was repeatedly subjected to severe offensive and
4   derogatory comments by Prof. Dimitris Achlioptas creating a hostile work
    environment, including sexual innuendo, and insults related to perceived mental
5   disability.  I reported the harassment to UC Santa Cruz and respondent Nikolaos
6   Sgourakis but it continued until ultimately I was forced to quit.  During my
    employment, I was paid less than my colleague, who was given preferential
7   treatment because of his national origin.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          -2-
                          *Complaint – DFEH No. 201907-06838815*
28   Date Filed: July 17, 2019

1  VERIFICATION

2  I, **Laura Weber**, am the **Attorney** in the above-entitled complaint.  I have read the
3  foregoing complaint and know the contents thereof.  The matters alleged are based
   on information and belief, which I believe to be true.

4
   On July 17, 2019, I declare under penalty of perjury under the laws of the State of
5  California that the foregoing is true and correct.

6                                                    **Oakland, California**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                              -3-
                  *Complaint – DFEH No. 201907-06838815*
28  Date Filed: July 17, 2019

# EXHIBIT B



STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency
GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

July 17, 2019

RE:  **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 201907-06817212
Right to Sue: Hammoudeh / University of California, Santa Cruz et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency                                      GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                          KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

July 17, 2019

Zayd Hammoudeh
3434 Kinsrow Ave. Apt 142
Eugene, Oregon 97401

RE:   **Notice of Case Closure and Right to Sue**
      DFEH Matter Number: 201907-06817212
      Right to Sue: Hammoudeh / University of California, Santa Cruz et al.

Dear Zayd Hammoudeh,

This letter informs you that the above-referenced complaint was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective July
17, 2019 because an immediate Right to Sue notice was requested. DFEH will take no
further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Zayd Hammoudeh                                      DFEH No. 201907-06817212

                                  Complainant,

vs.

University of California, Santa Cruz
1156 High Street
Santa Cruz, California 95064

Dimitris Achlioptas

,

                                  Respondents
_____

1. Respondent **University of California, Santa Cruz** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Zayd Hammoudeh**, resides in the City of **Eugene** State of **Oregon.**

3. Complainant alleges that on or about **September 28, 2018**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's race, national origin (includes language restrictions), color, religious creed - includes dress and grooming practices, disability (physical or mental), sexual harassment- hostile environment.

**Complainant was discriminated against** because of complainant's race, national origin (includes language restrictions), color, religious creed - includes dress and grooming practices, disability (physical or mental), sexual harassment- hostile environment and as a result of the discrimination was forced to quit.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was forced to quit.

Date Filed: July 17, 2019

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Additional Complaint Details:** I was repeatedly subjected to severe offensive and derogatory comments by Prof. Demitris Achlioptas creating a hostile work environment, including sexual innuendo and insults referring to my race, national origin, religion, and perceived disability.  I was also paid less than my colleague, who was given preferential treatment because of his national origin.  I complained to management at UC Santa Cruz who did not protect me from further harassment. Ultimately, I was forced to resign my employment.

-2-
*Complaint – DFEH No. 201907-06817212*

Date Filed: July 17, 2019

1   VERIFICATION

2   I, **Laura Weber**, am the **Attorney** in the above-entitled complaint.  I have read the
    foregoing complaint and know the contents thereof.  The matters alleged are based
3   on information and belief, which I believe to be true.

4
    On July 17, 2019, I declare under penalty of perjury under the laws of the State of
5   California that the foregoing is true and correct.

6                                                                **Oakland, California**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                                               -3-
27   ────────────────────────────────────────────────────────────────
                              *Complaint – DFEH No. 201907-06817212*
28   Date Filed: July 17, 2019

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ | *FOR COURT USE ONLY* |
|---|---|
| Santa Cruz Branch<br>701 Ocean Street, Room 110<br>Santa Cruz, CA 95060 | **FILED**<br>7/21/2020<br>Alex Calvo, Clerk<br>By: Richard Seago<br>Deputy, Santa Cruz County |
| BENJAMIN SHERMAN, et al<br><br>vs<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | |
| **CASE MANAGEMENT INFORMATION AND SETTING** | **CASE NUMBER:**<br>20CV01524 |

# DEFENDANT: YOU HAVE 30 CALENDAR DAYS TO FILE A WRITTEN RESPONSE WITH THE COURT ONCE YOU HAVE BEEN SERVED WITH THE SUMMONS AND COMPLAINT.

The date below is for a Case Management Conference. If you have not responded within 30 days, this hearing MAY NOT take place.

It is the duty of each party to be familiar with the California Rules of Court and the date, time and place of the first case management conference.

A written response is not always necessary. To make this determination it is important to seek legal advice and information. Some options are:

1. Santa Cruz County Bar Association Lawyer Referral Service: 831-425-4755 (Fee Based service)
2. Santa Cruz Superior Court Self Help Center: 1 Second Street, Room 301 Watsonville, CA 95076 831-786-7200 option 4. www.santacruzcourt.org for hours.
3. Santa Cruz Law Library: 701 Ocean Street, Room 70 (Basement), Santa Cruz, CA 95060 831-420-2205 www.lawlibrary.org for hours.
4. Watsonville Law Center: 831-722-2845

**PLAINTIFF:** This notice MUST be served with the summons on all defendants and cross-defendants. Notice of any other pending case management conference must be served on subsequently named defendants and cross defendants.

---

**YOUR CASE MANAGEMENT CONFERENCE DATE:**

**DATE:  11/17/2020         TIME:  8:30 A.M.     Santa Cruz Department 10**

**Address of the Court: 701 Ocean Street, Santa Cruz, California**

---

To appear by telephone at your Case Management Conference you **MUST** contact CourtCall at least 5 (five) **COURT** days before your hearing. Please call them at (888) 882-6878. Do NOT call the Court.



**GET TEXT REMINDERS!**
Text case number to (831) 208-5170 for reminders about hearing dates.

SUPCV 1012



# SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CRUZ
701 OCEAN STREET
SANTA CRUZ, CALIFORNIA 95060
(831) 420-2200
www.santacruzcourt.org

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKET

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant(s). Cross complainants must serve the ADR Information Packet on any new parties named to the action. (California Rule of Court 3.221)

---

The Court *encourages* the parties to use some form of ADR before proceeding to trial. You may choose ADR by:

- Indicating your preference on Case Management Form CM-110;

- Filing the Stipulation and Order to Attend Judicial Mediation or Private Mediation at least 10 days before the Case Management Conference (a local form included with the information packet); or

- Agree to ADR at your Initial Case Management Conference.

**QUESTIONS?** For more information regarding Santa Cruz County's Mediation Program, see local rule 7.1 or contact the Civil Calendar Department at (831) 420-2200.

---

Alternate Dispute Resolution (ADR) is a process, other than formal litigation, in which a neutral person assists the parties in resolving their dispute. Santa Cruz Superior Court offers Judicial Mediation. If the parties agree to Mediation, it is the policy of this Court to assign appropriate cases to mediation without making a determination of the value of the case.

Form Adopted for MANDATORY Use
Superior Court of Santa Cruz County
SUPCV 1012       01/01/20

STIPULATION AND ORDER TO ATTEND JUDICIAL
MEDIATION OR PRIVATE ARBITRATION

Page 1 of 3
Local Rule of Court 7.1

**What are the Advantages of Using ADR?**

- **ADR can save time.** Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.

- **ADR can save money.** By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorneys fees and court expenses).

- **ADR provides more control and flexibility.** Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.

- **ADR provides more participation.** Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.

- **ADR can reduce stress and provide greater satisfaction.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation. Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

**What are the Disadvantages of using ADR?**

- If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error or an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

**What ADR Options are Available?**

- **Mediation –** A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

    o **Court Mediation Program:** If the case is appropriate for Judicial Mediation and all parties agree to mediate, the Court will set the Judicial Mediation for a single session. The Case Management Judicial Officer will conduct the mediation.

    o **Private Mediation:** This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court.

- **Arbitration –** A neutral person (arbitrator) hears arguments and evidence from each side then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

Form Adopted for MANDATORY Use
Superior Court of Santa Cruz County
SUPCV 1012          01/01/20

STIPULATION AND ORDER TO ATTEND JUDICIAL
MEDIATION OR PRIVATE ARBITRATION

Page 2 of 3
Local Rule of Court 7.1

**SUPCV 1012**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT AN ATTORNEY (Name, State Bar number, and address):<br>NAME:<br>ADDRESS:<br>CITY, STATE, ZIP:<br><br>TELEPHONE NO:<br>FAX NO. (Optional)<br>EMAIL ADDRESS (Optional)<br>ATTORNEY FOR (Name): | *FOR COURT USE ONLY* |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ**

701 Ocean Street, Room 110

Santa Cruz, CA 95060

Santa Cruz Branch

Plaintiff/Petitioner

vs.

Defendant/Respondent:

| | |
|---|---|
| **STIPULATION AND ORDER TO ATTEND JUDICIAL MEDIATION OR PRIVATE ARBITRATION**<br>Must be filed 10 days before Case Management Conference | CASE NUMBER: |

FOR GOOD CAUSE as stated in the attached supporting declaration, the CASE MANAGEMENT CONFERENCE CURRENTLY SET FOR: (DATE)_____

CHECK ONLY ONE BOX:

1. ☐ The parties stipulate to court ordered mediation.
2. ☐ The parties stipulate to private mediation or arbitration, to be arranged by the parties and completed within 120 days of the current CMC date stated above. The parties agree that such process shall be a good faith attempt to resolve the case.

SIGNATURES OF COUNSEL OR PARTY WITHOUT AN ATTORNEY:

_____     PRINT/TYPE NAME: _____

DATE: _____     ATTORNEY FOR: _____

_____     PRINT/TYPE NAME: _____

DATE: _____     ATTORNEY FOR: _____

ADDITIONAL SIGNATURES IN ATTACHMENT "A"

**ORDER**

BASED ON THE STIPULATION OF THE PARTIES, THE SUPPORTING DECLARATION, AND FINDING GOOD CAUSE, THE APPLICATION IS HEREBY GRANTED

☐ SET FOR JUDICIAL MEDIATION ON: _____ AT: _____ a.m. /p.m.
☐ VACATE CMC CURRENTLY SET FOR: _____ AT: _____ a.m. /p.m.

Date: _____     _____
                                                                   JUDGE OF THE SUPERIOR COURT

Form Adopted for MANDATORY Use
Superior Court of Santa Cruz County
SUPCV 1012          01/01/20

**STIPULATION AND ORDER TO ATTEND JUDICIAL
MEDIATION OR PRIVATE ARBITRATION**

Page 3 of 3
Local Rule of Court 7.1

# Exhibit B

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT ONLY |
|---|---|
| Jonathan H. Siegel (SBN 78143); Latika Malkani (SBN 184301); Laura Herron Weber (SBN 226934) SIEGEL LEWITTER MALKANI 1939 Harrison Street, Suite 307 Oakland, California 94612 TELEPHONE NO.: 510-452-5000    FAX NO. *(Optional)*: 510-452-5004 E-MAIL ADDRESS *(Optional)*: jsiegel@sl-employmentlaw.com; lmalkani@sl-employmentlaw.com ATTORNEY FOR *(Name)*: Plaintiffs Benjamin Sherman and Zayd Hammoudeh | **ELECTRONICALLY FILED** Superior Court of California County of Santa Cruz 8/14/2020 3:18 PM Alex Calvo, Clerk By: Richard Kersten Seago, Deputy |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SANTA CRUZ
STREET ADDRESS: 701 Ocean Street, Room 110
MAILING ADDRESS: 701 Ocean Street, Room 110
CITY AND ZIP CODE: Santa Cruz   95060
BRANCH NAME: Civil Division

| PLAINTIFF/PETITIONER: Benjamin Sherman and Zayd Hammoudeh | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: The Regents of the University of California | 20CV01524 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] summons
   b. [X] complaint
   c. [X] Alternative Dispute Resolution (ADR) package
   d. [ ] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [X] other *(specify documents)*: Case Management Information and Setting

3. a. Party served *(specify name of party as shown on documents served)*:

   The Regents of the University of California

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

4. Address where the party was served: The Office of the General Counsel of the Regents of the University of California
   1111 Franklin Street, 8th Floor, Oakland, California 94607-5200

5. I served the party *(check proper box)*
   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:                (2) at *(time)*:

   b. [X] **by substituted service.** On *(date)*: 8/14/2020   at *(time)*: 1:31 pm   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

   Steven Poblete, Security Officer

   (1) [X] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) [X] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*: 8/14/2020 from *(city)*: Oakland, CA   **or** [ ] a declaration of mailing is attached.

   (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLAINTIFF/PETITIONER: Benjamin Sherman and Zayd Hammoudeh | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: The Regents of the University of California | 20CV01524 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*             (2)  from *(city):*

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me.  *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  ☐  to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
  a.  ☐  as an individual defendant.
  b.  ☐  as the person sued under the fictitious name of *(specify):*
  c.  ☐  as occupant.
  d.  ☒  On behalf of *(specify):* The Regents of the University of California
    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☒ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**
  a.  Name: Renee A. Ricasata
  b.  Address: 1939 Harrison Street, Suite 307, Oakland, CA 94612
  c.  Telephone number: (510) 452-5000
  d.  **The fee** for service was: $ 0
  e.  I am:

    (1)  ☒  not a registered California process server.
    (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).
    (3)  ☐  a registered California process server:
      (i)  ☐  owner  ☐  employee  ☐  independent contractor.
      (ii)  Registration No.:
      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:  August 14, 2020

| Renee A. Ricasata | ▶ | *(signature)* |
|---|---|---|
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) | | (SIGNATURE ) |

# Exhibit C



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ**

Santa Cruz Branch
701 Ocean Street, Room 110
Santa Cruz, CA 95060

*FOR COURT USE ONLY*

**FILED**

7/21/2020

Alex Calvo, Clerk

By: Richard Seago

Deputy, Santa Cruz County

BENJAMIN SHERMAN, et al

vs

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

| CASE MANAGEMENT INFORMATION AND SETTING | CASE NUMBER: 20CV01524 |
|---|---|

# DEFENDANT: YOU HAVE 30 CALENDAR DAYS TO FILE A WRITTEN RESPONSE WITH THE COURT ONCE YOU HAVE BEEN SERVED WITH THE SUMMONS AND COMPLAINT.

The date below is for a Case Management Conference. If you have not responded within 30 days, this hearing MAY NOT take place.

It is the duty of each party to be familiar with the California Rules of Court and the date, time and place of the first case management conference.

A written response is not always necessary. To make this determination it is important to seek legal advice and information. Some options are:

1. Santa Cruz County Bar Association Lawyer Referral Service: 831-425-4755 (Fee Based service)
2. Santa Cruz Superior Court Self Help Center: 1 Second Street, Room 301 Watsonville, CA 95076 831-786-7200 option 4. www.santacruzcourt.org for hours.
3. Santa Cruz Law Library: 701 Ocean Street, Room 70 (Basement), Santa Cruz, CA 95060 831-420-2205 www.lawlibrary.org for hours.
4. Watsonville Law Center: 831-722-2845

**PLAINTIFF:** This notice MUST be served with the summons on all defendants and cross-defendants. Notice of any other pending case management conference must be served on subsequently named defendants and cross defendants.

---

**YOUR CASE MANAGEMENT CONFERENCE DATE:**

**DATE:  11/17/2020          TIME:  8:30 A.M.    Santa Cruz Department 10**

**Address of the Court: 701 Ocean Street, Santa Cruz, California**

---

To appear by telephone at your Case Management Conference you **MUST** contact CourtCall at least 5 (five) **COURT** days before your hearing. Please call them at (888) 882-6878. Do NOT call the Court.



**GET TEXT REMINDERS!**
Text case number to (831) 208-5170 for reminders about hearing dates.

# Exhibit D

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
9/10/2020 11:35 AM
Alex Calvo, Clerk
By: Richard Kersten Seago, Deputy

1  Jonathan H. Siegel (SBN 78143)
2  Latika Malkani (SBN 184301)
   Laura Herron Weber (SBN 226934)
3  SIEGEL LEWITTER MALKANI
   1939 Harrison Street, Suite 307
4  Oakland, California  94612
   Tel:  (510) 452-5000
5  Fax:  (510) 452-5004
6  jsiegel@sl-employmentlaw.com
   lmalkani@sl-employmentlaw.com
7  lweber@sl-employmentlaw.com

8  *Attorneys for Plaintiffs Benjamin Sherman
   and Zayd Hammoudeh*

9

10           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11               IN AND FOR THE COUNTY OF SANTA CRUZ

12

13  BENJAMIN SHERMAN and ZAYD          ) Case No. 20CV01524
    HAMMOUDEH,                          )
14                                      ) **PLAINTIFFS' NOTICE OF DEPOSIT OF**
                Plaintiffs,             ) **JURY FEES**
15                                      )
           v.                           )
16                                      )
    THE REGENTS OF THE UNIVERSITY OF    )
17  CALIFORNIA, and DOES I through X,   )
    inclusive,                          )
18                                      )
                Defendants.             ) Action Filed:    July 17, 2020
19  _____) Trial Date:      TBD

20

21        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

22        Pursuant to C.C.P. 631(b), Plaintiffs BENJAMIN SHERMAN and ZAYD

23  HAMMOUDEH, hereby submit advance jury fees in the amount of One Hundred and Fifty

24  Dollars ($150.00) in the above-entitled action through court-approved vendor Odyssey efileCA.

25  //

26  //

27  //

28  //

**SIEGEL
LEWITTER
MALKANI**
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

1

DATED:   September 10, 2020                    SIEGEL LEWITTER MALKANI

By:   *Latita Malkani*
      _____
      Jonathan H. Siegel
      Latika Malkani
      Laura Herron Weber
*Attorneys for Plaintiffs Benjamin Sherman*
*and Zayd Hammoudeh*



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

**PROOF OF SERVICE**

I declare that I am employed in the county of Alameda, California. I am over the age of eighteen years and not a party to the within action. My business address is 1939 Harrison Street, Suite 307, Oakland, California 94612.

On September 10, 2020, I served the within documents:

**PLAINTIFFS' NOTICE OF DEPOSIT OF JURY FEES**

on the interested party(ies) herein by sending true copies as follows:

Office of the General Counsel            *Agent for Service of Process for The*
The Regents of the University of California    *Regents of the University of California*
1111 Franklin Street, 8th Floor
Oakland, CA 94607

☒   (BY MAIL)  Each such envelope, with postage thereon fully prepaid, was placed in the United States mail at Oakland, California. I am readily familiar with this firm's business practice for collection and processing of correspondence for mailing with the U.S. Postal Service pursuant to which practice the correspondence will be deposited with the U.S. Postal Service this same day in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on September 10, 2020 at Oakland, California.

_____
Renee A. Ricasata

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

# Exhibit E

1   SANDRA L. McDONOUGH (SBN 193308)
    smcdonough@paulplevin.com
2   KARYN R. Moore (SBN 309787)
    kmoore@paulplevin.com
3   **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
    101 West Broadway, Ninth Floor
4   San Diego, California 92101-8285
    Telephone: 619-237-5200
5   Facsimile: 619-615-0700

6   Attorneys for Defendant THE REGENTS OF
    THE UNIVERSITY OF CALIFORNIA

7

8

9                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                         **COUNTY OF SANTA CRUZ**

11

12   BENJAMIN SHERMAN and ZAYD          Case No. 20CV01524
     HAMMOUDEH,
13                                      **DEFENDANT THE REGENTS OF THE**
                    Plaintiffs,         **UNIVERSITY OF CALIFORNIA'S**
14                                      **ANSWER TO PLAINTIFF'S**
             v.                         **COMPLAINT**
15
     THE REGENTS OF THE UNIVERSITY Of   Judge:       Hon. Timothy Volkmann
16   CALIFORNIA, and DOES I through X,  Dept.:       5
     inclusive,                         Action Filed: July 17, 2020
17                                      Trial Date:   not set
                    Defendants.
18                                             **EXEMPT FROM FEES**
                                               **GOVT. CODE § 6103**
19

20        Defendant The Regents of the University of California ("Defendant") answers the

21   Complaint ("Complaint") filed by Plaintiffs Benjamin Sherman and Zayd Hammoudeh

22   ("Plaintiffs") as follows:

23                         <u>**GENERAL DENIAL**</u>

24        Pursuant to California Code of Civil Procedure section 431.30, Defendant denies each and

25   every material allegation of the Complaint, and each cause of action raised against it, and further

26   specifically denies that Plaintiffs have been damaged in any manner or amount, or at all, as a result

27   of any act or omission by Defendant or any of its officers, agents, or employees.

28   / / /

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
9/11/2020 5:05 PM
Alex Calvo, Clerk
By: Richard Kersten Seago, Deputy

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

724067.1

DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S ANSWER TO PLAINTIFF'S
COMPLAINT

# AFFIRMATIVE DEFENSES

Further responding to the Complaint, Defendant asserts the following as affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state facts sufficient to constitute a cause of action.

## SECOND AFFIRMATIVE DEFENSE

Defendant is informed and believes, and thereon alleges, that Plaintiffs' claims against Defendant are barred by the applicable statute of limitations, including but not limited to, Government Code sections 12960(c) and 12965(b) and Code of Civil Procedure sections 335.1, 338(a) and (n), 340(a) and (b), and 343.

## THIRD AFFIRMATIVE DEFENSE

Defendant is informed and believes, and on that basis alleges, that Plaintiffs' claims are barred by governmental immunities provided to public entities, including, but not limited to, the immunities provided in Government Code sections 815, 815.2, 818, 818.2, 818.8, 820.2, 820.8, 821.6 and 822.2, including all relevant subsections.

## FOURTH AFFIRMATIVE DEFENSE

Defendant is informed and believes, and on that basis alleges, that Plaintiffs' claims against Defendant are barred because Plaintiffs have failed to exhaust all internal administrative remedies, including those required by state statute and the University of California's policies, and comply with all necessary prerequisites to the filing of this civil action.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' fourth and fifth causes of action are barred, in whole or in part, due to Plaintiffs' failure to timely exhaust their administrative remedies, as required by California Government Code section 12960.

## SIXTH AFFIRMATIVE DEFENSE

Defendant is informed and believes, and thereon alleges, that Plaintiffs have failed to exhaust judicial remedies and are therefore barred from maintaining any or all causes of action against Defendant.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs are barred by the doctrine of estoppel from all relief sought in their Complaint.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiffs are barred by the doctrine of waiver from all relief sought in their Complaint.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' damages, if any, are limited by the doctrine of unclean hands.

**TENTH AFFIRMATIVE DEFENSE**

Defendant had policies designed to prevent and correct reported harassment, discrimination and retaliation. Defendant's remedial actions taken in response to Plaintiffs' complaints exceeded Defendant's obligations to Plaintiffs under applicable law and effectively ended the complained-of discrimination, harassment and retaliation, as Plaintiffs did not report any further contact or incident with Professor Achlioptas following Defendant's intervention. Thus, Defendant's response to Plaintiffs' complaint was not clearly unreasonable in light of the known circumstances and the response complied with Title IX.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' Title IX and Title VI claims are pre-empted by Title VII, to the extent they arise out of Plaintiffs' employment with Defendant.

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims against Defendant are barred because Defendant's actions were reasonable in that Defendant exercised reasonable care to prevent and correct any behavior, and Plaintiffs unreasonably failed to take advantage of preventive or corrective procedures, the reasonable use of which would have prevented some or all of Plaintiffs' alleged harm.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims against Defendant are barred because the alleged conduct of which Plaintiffs complain, if committed, was made in good faith, honestly, without malice, in the exercise of business judgment and for legitimate, non-discriminatory and non-retaliatory reasons.

/ / /

/ / /

1

**FOURTEENTH AFFIRMATIVE DEFENSE**

Defendant is informed and believes, and on that basis alleges, that Plaintiffs have failed, refused, or neglected to mitigate or avoid the damages complained of in the Complaint and are thereby barred, in whole or in part, from recovering monetary damages from Defendant.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' damages, if any, are limited by the doctrine of avoidable consequences.

**SIXTEENTH AFFIRMATIVE DEFENSE**

All damages allegedly incurred by Plaintiffs were proximately caused by, and are attributable to, the acts of Plaintiffs, and Plaintiffs' conduct bars any and all claims for relief or, at a minimum, any recovery by Plaintiffs must be diminished by the percentage and extent of Plaintiffs' own fault in the matters encompassed in the Complaint.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs are barred from seeking any damages from the purported physical or emotional injuries allegedly suffered as a result of their employment in that the sole and exclusive remedy for such damages is governed by the California Workers' Compensation Act.  (Cal. Lab. Code §§ 3600, *et. seq.*)

**RESERVATION OF RIGHTS**

This answering Defendant presently has insufficient knowledge or insufficient information upon which to form a belief as to whether it may have additional, yet unasserted, affirmative defenses.  This answering Defendant therefore reserves the right to assert additional affirmative defenses in the event discovery indicates it would be appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    Wherefore, Defendant prays that:

2    1.    Plaintiffs take nothing by way of their Complaint;

3    2.    For reasonable attorneys' fees incurred in defending this suit;

4    3.    Defendant's costs of suit herein; and

5    4.    For such other and further relief as the Court deems just and proper.

6    Dated:  September 11, 2020                PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

7

8    By:    _Sandra McDonough_____

     SANDRA L. McDONOUGH
9    KARYN R. MOORE
     Attorneys for Defendant THE REGENTS OF THE
10   UNIVERSITY OF CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

724067.1                            5
DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S ANSWER TO PLAINTIFF'S
COMPLAINT

1

## **PROOF OF SERVICE**

2

***Sherman & Hammoudeh v. The Regents of the University of California***
**Case No. 20CV01524**

3

**STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

4

5        At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Diego, State of California.  My business address is 101 West Broadway, Ninth Floor, San Diego, CA 92101-8285.

6

7        On September 11, 2020, I served true copies of the following document(s) described as **DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S ANSWER TO PLAINTIFF'S COMPLAINT** on the interested parties in this action as follows:

8

Jonathan H. Siegel
9   Latika Malkani
Laura Heron Webber
10   Siegel, LeWitter Malkali
1939 Harrison Street, Suite 307
11   Oakland, CA 94612
Telephone: 510-452-5000
12   Facsimile: (510) 452-5004
E-Mail: lmalkani@sl-employmentlaw.com;
13   jsiegel@sl-emp1oyment1aw.com &
lwebber@sl-employmentlaw.com

14

15        **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address adickey@paulplevin.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

16

17        I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

18

19        Executed on September 11, 2020, at San Diego, California.

20

21        _____
Amy R. Dickey
22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

1

2

3

## PROOF OF SERVICE

### *Sherman & Hammoudeh v. The Regents of the University of California*
### Case No. 5:20-cv-06441

4   **STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

5       At the time of service, I was over 18 years of age and not a party to this action.  I am
employed in the County of San Diego, State of California.  My business address is 101 West
6   Broadway, Ninth Floor, San Diego, CA 92101-8285.

7       On September 14, 2020, I served true copies of the following document(s) described as
**NOTICE OF REMOVAL** on the interested parties in this action as follows:
8

9   Jonathan H. Siegel
Latika Malkani
Laura Heron Webber
10  Siegel, LeWitter Malkali
1939 Harrison Street, Suite 307
11  Oakland, CA 94612
Telephone: 510-452-5000
12  Facsimile: (510) 452-5004
E-Mail: lmalkani@sl-employmentlaw.com;
13  jsiegel@sl-employmentlaw.com;
lwebber@sl-employmentlaw.com
14

15      **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on a court order or an
agreement of the parties to accept service by e-mail or electronic transmission, I caused the
16  document(s) to be sent from e-mail address adickey@paulplevin.com to the persons at the e-mail
addresses listed in the Service List.  I did not receive, within a reasonable time after the
17  transmission, any electronic message or other indication that the transmission was unsuccessful.

18      I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct and that I am employed in the office of a member of the bar of this
19  Court at whose direction the service was made.

20      Executed on September 14, 2020, at San Diego, California.

21

22  _____
Amy R. Dickey

23

24

25

26

27

28