UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| BENJAMIN SHERMAN, et al., | Case No. 20-cv-06441-VKD |
|---|---|
| Plaintiffs, | |
| v. | **ORDER RE MOTIONS IN LIMINE** |
| THE REGENTS OF UNIVERSITY OF CALIFORNIA, | Re: Dkt. Nos. 59, 60, 61, 62, 63, 64, 65, 66, 67, 81, 82 |
| Defendant. | |

The Court held a pretrial conference in this matter on May 6, 2022. Dkt. No. 115. This order resolves the parties' motions in limine. Dkt. Nos. 59, 60, 61, 62, 63, 64, 65, 66, 67, 81, 82.

## I.  PLAINTIFFS' MOTIONS IN LIMINE

### A.  Motion in Limine No. 1 (Evidence of Dispute with Adel Atta)

Plaintiffs move for an order excluding any evidence or argument regarding (1) Mr. Hammoudeh's grade dispute arising from a class he took in the spring of 2014 at San Jose State University taught by a Lecturer named Adel Atta, (2) Professor Atta's alleged retaliatory allegations against Mr. Hammoudeh, including a police report and claims of harassment, and (3) social media posts by Mr. Hammoudeh or others regarding Professor Atta and/or the grade dispute. Dkt. No. 64.[1] Plaintiffs argue that such evidence is not relevant to any of the events in this lawsuit, unduly prejudicial, and inadmissible character evidence. Fed. R. Evid. 401, 402, 403, 404(a).

The Regents argue that such evidence is relevant to show Mr. Hammoudeh's credibility as

---

[1] During the pretrial conference, plaintiffs clarified that that this motion in limine concerns Trial Exhibits 52, 95, 656, and 657.

a witness and Mr. Hammoudeh's alleged emotional distress damages. Dkt. No. 88 at 3. In addition, The Regents argue that evidence of Mr. Hammoudeh's dispute with Professor Atta is not being offered to show action in conformity with a particular character trait, but to show Mr. Hammoudeh's biases, motivations, and intentions in this case, as well as to Mr. Hammoudeh's general knowledge of the complaint processes within universities and the timeframe for resolving complaints. *Id.* at 4. The Regents also argue that evidence of Mr. Hammoudeh's dispute with Professor Atta show that Mr. Hammoudeh was "quite persistent in raising concerns about a professor, without regard to his own status." *Id.* at 5.

The motion is granted. Evidence of Mr. Hammoudeh's dispute with Professor Atta regarding a grade he received while attending a different educational institution during the 2014-15 academic year is not relevant to any claim or defense in this action. The Regents may not introduce evidence (exhibits or testimony) regarding Mr. Hammoudeh's dispute with Professor Atta. However, an exhibit is not inadmissible merely because it mentions Adel Atta in passing. *See, e.g.*, Ex. 95.

### B.  Motion in Limine No. 2 (Evidence Regarding Majdy Wardah)

Plaintiffs move to preclude The Regents from offering any evidence, including documents and testimony, regarding Mr. Hammoudeh's interactions with Majdy Wardah, including documents related to a small claims action, commentary, or internet statements authored by Mr. Hammoudeh or others on a website called STOPMajdyWardah.com, which contains writings in Arabic.[2] Plaintiffs argue that evidence of Mr. Hammoudeh's interactions with Mr. Wardah, a Muslim cleric, is not only prejudicial, but entirely unrelated to any of the events in this lawsuit and irrelevant to Mr. Hammoudeh's credibility as a witness, as Mr. Hammoudeh prevailed in his small claims case against Mr. Wardah and there is no evidence that any of Mr. Hammoudeh's statements were untruthful or inaccurate. Dkt. No. 65 at 4; Dkt. No. 65-1 ¶ 4. Plaintiffs also argue that evidence of Mr. Hammoudeh's civil action against Mr. Wardah and his related internet activity is inadmissible character evidence, and that The Regents should not be permitted to introduce such

---

[2] During the pretrial conference, plaintiffs clarified that that this motion in limine concerns Trial Exhibits 630 and 677.

1   evidence to show that Mr. Hammoudeh is litigious or has a propensity to harass others.  Dkt. No.
2   65 at 5–6.
3     The Regents argue that such evidence is relevant to Mr. Hammoudeh's credibility,
4   including his motivations in this case ("exposing alleged wrongs"), and Mr. Hammoudeh's alleged
5   emotional distress damages.  Dkt. No. 89 at 3–4.  Further, The Regents argue that such evidence is
6   not unfairly prejudicial because alleged discrimination on the basis of Mr. Hammoudeh's race,
7   religion, and national origin are primary issues in this case.  *Id.* at 4.  Finally, The Regents argue
8   that evidence of Mr. Hammoudeh's civil action against Mr. Wardah and his related internet
9   activity would not be offered to show action in conformity with a particular character trait, but to
10  show Mr. Hammoudeh's motivations and intentions in this case.  *Id.* at 5; Fed. R. Evid. 404(a)(3)
11  and (b)(2); Fed. R. Evid. 607; Fed. R. Evid. 608.
12    The motion is granted.  Evidence of Mr. Hammoudeh's dispute with Mr. Wardah or
13  evidence that he started a website intended to alert a community to the dangers posed by Mr.
14  Wardah's purported efforts to defraud some members of that community is not relevant to any
15  claim or defense in this action.  The Regents may not introduce evidence (exhibits or testimony)
16  regarding Mr. Hammoudeh and Majdy Wardah.
17    **C.**  **Motion in Limine No. 3 (Evidence of Plaintiffs' Conduct)**
18    Plaintiffs moves to preclude The Regents from introducing any evidence or argument
19  regarding any of plaintiffs' conduct while they attended the University of California, Santa Cruz,
20  including evidence that plaintiffs sometimes used sexualized language or swear words while
21  engaged in their academic research or in the classroom.  Dkt. No. 66 at 2.  Plaintiffs argue that
22  plaintiffs' conduct and language are not at issue in this case and are irrelevant to whether plaintiffs
23  were subjected to unlawful harassment or if The Regents' response to their complaints was clearly
24  unreasonable.  *Id.* at 3–4.  Drawing a comparison to *Jaros v. LodgeNet Entertainment Corp.*, 294
25  F.3d 960 (8th Cir. 2002), plaintiffs argue that the evidence will prejudice jurors against the
26  plaintiffs and improperly suggest to the jury that plaintiffs' conduct is at issue in this case.  Fed. R.
27  Evid. 403.
28    The Regents argue that evidence of plaintiffs' own behavior and language is relevant to

United States District Court
Northern District of California

show that plaintiffs were not offended by the alleged sexual comments or conduct and so the alleged harassment could not have undermined or detracted from plaintiffs' educational experience. Dkt. No. 90 at 1–2. Further, The Regents argue that such evidence is relevant to defend against plaintiffs' allegations that they suffered emotional distress from the alleged harassment. *Id.* at 2. The Regents, citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 69 (1986), dispute that the prejudicial effect of such evidence outweighs its probative value. Dkt. No. 90 at 3. The Regents contend that the evidence tends to show that "[Professor Achlioptas's] conduct was not unwelcome," did not cause emotional distress, and did not undermine or detract from plaintiffs' educational experience. *Id.* at 3.

The motion is granted, in part, and denied, in part.

Evidence of plaintiffs' casual use of expletives and mildly derogatory language is not relevant to any claim or defense. Plaintiffs contend that Professor Achlioptas engaged in sexual harassment and, in the case of Mr. Hammoudeh, also harassment based on race, national origin, and religion. Plaintiffs' mere use of expletives and other derogatory language regarding matters unrelated to the nature of the harassment they claim they experienced does not tend to undermine their claim that Professor Achlioptas's behavior was unwelcome, nor does it tend to undermine their claim that they were harmed by the University's alleged deliberate indifference to that behavior, as The Regents suggest. For example, The Regents may not introduce Trial Exhibits 17 and 19 in evidence solely for the purpose of showing that Mr. Sherman used the term "f---" or referred to himself as a "moron" or had an extended discussion of white privilege in communications with Professor Achlioptas, as these matters are unrelated to Mr. Sherman's claim that the University was deliberately indifferent to sexual harassment.

However, The Regents may introduce evidence of either plaintiff's use of sexualized language or innuendo if such language was used in a relevant context, such as in the course of working on academic research projects, and if Professor Achlioptas was a participant in the communication or knew of it. For example, Trial Exhibit 18 is an email from Mr. Sherman to Professor Achlioptas in which Mr. Sherman uses language that could be interpreted as containing sexual innuendo with reference to Professor Achlioptas and another professor at UC Santa Cruz.

4

1  Such evidence could tend to undermine Mr. Sherman's claim that he found Professor Achlioptas's
2  own sexualized communications offensive and/or that he experienced emotional distress as a
3  result.

        **D.**       **Motion in Limine No. 4 (Evidence of The Regents' Training and Policies)**

Plaintiffs move to preclude The Regents from introducing any evidence regarding the University's training of its staff or students regarding sexual harassment and other workplace policies, including evidence or argument about its training of Professor Achlioptas, and evidence or argument that plaintiffs should have complained earlier because they had been trained to do so. Dkt. No. 67 at 2. Specifically, plaintiffs identify as irrelevant The Regents' proposed Trial Exhibits 244, 259, 313, 319, 322–326, which contain documents related to sexual harassment training for Professor Achlioptas, Mr. Sherman, and graduate students generally. *Id.* at 3. Plaintiffs argue that The Regents' evidence of policies and training provided to supervisors to prevent sexual harassment is not relevant to plaintiffs' deliberate indifference claims under Title IX, Title VI, and the California Education Code, which turn on whether The Regents' response to plaintiffs' complaints was clearly unreasonable. *Id.* at 4. Further, plaintiffs argue that The Regents' evidence of efforts to train staff and students is not relevant to plaintiffs' FEHA claims of national-origin discrimination and workplace harassment, which turn on the supervisory conduct engaged in by Professor Achlioptas. *Id.* at 4–5. Plaintiffs also argue that such evidence is not relevant to plaintiffs' claims for intentional discrimination under the Unruh Civil Rights Act, which are premised on how The Regents responded after Mr. Hammoudeh's August 28, 2018 complaint to Dean Wolf. *Id.* at 5. Finally, plaintiffs argue that admitting such evidence creates a danger of unfair prejudice, as it would invite the jury to do two improper things: (1) decide the reasonableness of The Regents' response to plaintiffs' complaints based on training that occurred prior to the complaints, and (2) blame the plaintiffs for failing to report the harassment sooner. *Id.* at 6 (citing *United States v. Winkle*, 477 F.3d 407 (6th Cir. 2007) and *Campbell v. Ingersoll Milling Machine Co.*, 893 F.2d 925, 929 (7th Cir. 1990)).

The Regents argue that evidence of The Regents' training of staff or students regarding sexual harassment and other policies is directly relevant to (1) whether The Regents were

5

1  deliberately indifferent to a complaint of harassment (*see* Dkt. No. 91 at 2 (citing *Thompson v.*
2  *Bick*, No. 2:19-cv-01651-JDP (PC), 2022 WL 1085225, at *2 (E.D. Cal. Mar. 9, 2022) and *Garcia*
3  *v. Cty. of Riverside*, CV 5:18-00839 SJO (ASx), 2019 WL 4282903, at *18 (C.D. Cal. Jun. 7,
4  2019))); (2) whether the plaintiffs suffered harassment that undermined and detracted from their
5  educational experience; (3) whether they suffered emotional distress caused by the alleged
6  harassment; and (4) plaintiffs' credibility. Dkt. No. 91 at 1–3. The Regents argue that plaintiffs'
7  knowledge of the University's harassment policies while not bringing a complaint for "over a
8  year" is valid evidence to challenge plaintiffs' allegations that the harassment they experienced
9  undermined and detracted from their educational experience, and that they suffered emotional
10 distress. Dkt. No. 91 at 4.

11 The motion is denied. The existence of policies and training for students and staff
12 regarding sexual harassment, reflecting efforts to prevent and address such harassment, clearly is
13 relevant to The Regents' defense.

14 **E.  Motion in Limine No. 5 (Mr. Hammoudeh's Comments About His Marriage)**

15 Plaintiffs move to preclude The Regents from introducing any evidence or argument
16 regarding specific statements made by Mr. Hammoudeh about his wife and marital relationship.
17 Dkt. No. 82 at 2. Plaintiffs argue that such evidence is entirely unrelated to any issues in this
18 lawsuit, and that any probative value is outweighed by the risk of prejudice to Mr. Hammoudeh.
19 *Id.* at 3–4. The Regents argue that evidence of Mr. Hammoudeh choosing to "confide" in
20 Professor Achlioptas about Mr. Hammoudeh's marriage is highly relevant to show (1) that the
21 alleged deliberate difference to harassment by The Regents is not the sole cause of his emotional
22 distress; (2) that Professor Achlioptas's conduct was not unwelcome; and (3) that it was not as
23 emotional distressing as Mr. Hammoudeh alleges to live apart from his wife. Dkt. No. 92 at 2.
24 The Regents also argue that such evidence is not prejudicial because The Regents do not intend to
25 introduce it to minimize or normalize language used by Professor Achlioptas, or to show that Mr.
26 Hammoudeh invited harassment. *Id.* at 3.

27 The motion is granted. The Court understands the remark in question was made by Mr.
28 Hammoudeh to Professor Achlioptas about his relationship with his wife during a period of time

6

that pre-dates Mr. Hammoudeh's interactions with Professor Achlioptas. If that is the case, the remark is not relevant to Mr. Hammoudeh's claim that he experienced emotional distress because he felt compelled to leave the UCSC graduate program due to the University's deliberate indifference, and this required him to live apart from his wife. However, evidence of Mr. Hammoudeh's relationship with his wife during the relevant time period may or may not be relevant, depending on the factors on which Mr. Hammoudeh relies to support his claim for emotional distress damages.

## II.    DEFENDANT'S MOTIONS IN LIMINE

### A.    Motion in Limine No. 1 (Evidence of Plaintiffs' Alleged Damages)

The Regents move to exclude evidence of plaintiffs' alleged economic and non-economic damages. Dkt. No. 59. The Regents argue that plaintiffs' belated provision of this evidence to The Regents warrants its exclusion because plaintiffs failed to comply with this Court's January 4, 2022 order directing plaintiffs to provide supplemental responses to The Regents' Interrogatories Nos. 4–6 by January 18, 2022. *Id.* at 2; Dkt. No. 39 at 4. (The parties do not dispute that plaintiffs' counsel sent defense counsel verified supplemental responses to these interrogatories on January 20, 2022. Dkt. No. 59-1 ¶ 4; Dkt. No. 99-1 ¶ 9.) Plaintiffs oppose The Regents' motion, arguing that the delayed response was harmless, and that The Regents suffered no prejudice. Dkt. No. 99 at 4–5. Plaintiffs also argue that the delay was substantially justified, as plaintiffs' lead counsel attests that she fell very ill with COVID-19 in early January and that her illness continued until about January 21, 2022. Dkt. No. 99-1 ¶ 5.

The motion is denied. The Regents conceded at the pretrial conference that they suffered no prejudice from the plaintiffs' delay. The Court concludes that an exclusionary sanction is not warranted in these circumstances.

### B.    Motion in Limine No. 2 (Post-Deposition Expert Opinions)

The Regents move to preclude plaintiffs from presenting at trial any new, post-deposition opinions of plaintiffs' designated expert economist Nora Ostrofe and vocational expert John Berg. Dkt. No. 60. The Regents argue that they will be significantly prejudiced if these experts present testimony not shared during their respective depositions, as such evidence was not previously

disclosed to The Regents. *Id.* at 1, 6–7. The Regents also reiterate that Rule 26(a)(2) of the Federal Rules of Civil Procedure is designed to prevent unfair surprise in trial and to permit the opposing party to prepare rebuttal reports and depose the expert. *Id.* at 4. Plaintiffs oppose this motion, arguing that it is unnecessary, as plaintiffs' designated experts fully intend to comply with Rule 26(a)(2), and plaintiffs do not intend any expert opinion testimony beyond that already expressed in written disclosures or depositions. Dkt. No. 97 at 1–4. Plaintiffs' counsel attests that since the depositions of these experts, neither has disclosed any information or expressed any opinion that was not discussed at the deposition. *Id.*; Dkt. No. 97-1 ¶ 8. Plaintiffs also argue that even if plaintiffs' experts were to provide testimony not previously disclosed, exclusion of such evidence would not be appropriate if the failure to disclose was substantially justified or harmless. Dkt. No. 97 at 5 (citing Fed. R. Civ. P. 37(c)(1)).

The motion is denied as moot.

### C. Motion in Limine No. 3 (Investigation Records and Reports)

The Regents move to exclude "any and all" records and reports produced in connection with "various investigation procedures, including but not limited to Title IX investigations and The Regents' Faculty Code of Conduct investigations." Dkt. No. 61 at 2. Specifically, The Regents seek to exclude any evidence regarding the findings in the investigative reports, the contents and substance of the reports, the content of any disciplinary proceedings, the content of any letters referencing disciplinary proceedings, and "related findings." *Id*. The Regents argue that any investigation reports are irrelevant because an investigation conducted (and the conclusions reached) in the context of The Regents' policies are not based on legal standards and do not amount to legal conclusions of fault. *Id.* at 3. Further, The Regents argue that the rules of evidence are not observed during such investigations, so the information relied upon to create the report is improper evidence for a jury to consider. *Id.* at 4. Moreover, The Regents insist that plaintiffs' claims do not turn on "whether the underlying allegations against Achlioptas have merit," so the specifics of the reports' findings and the underlying evidence relied upon are irrelevant. *Id*. The Regents also argue that the investigation reports contain improper legal conclusions and inadmissible hearsay. *Id.* at 5–6, 8. Finally, The Regents argue that the findings

in the investigation reports may unfairly prejudice the jury and confuse the jury into thinking the decision delegated to them has already been made. *Id.* at 6–7.

Plaintiffs oppose this motion, arguing that they will not offer these investigation reports (which plaintiffs identify as Trial Exhibits 214, 217, 218, 219, and 220) and evidence related to their findings to prove the truth of the factual assertions in the reports or as expert testimony, but to assist the jury in resolving the factual issues relating to The Regents' actual notice and response to the alleged harassment. Dkt. No. 94 at 1–2, 4–5, 7–8. Plaintiffs argue that the content of the investigation reports and related evidence is highly relevant because it is evidence of what The Regents stated and understood about plaintiffs' various complaints; the scope of the investigation reports is also directly relevant to the reasonableness of The Regents' response to plaintiffs' complaints. *Id.* at 3–4. Moreover, plaintiffs argue that the reports contain only investigative findings about whether various professors' conduct violated The Regents' policies, but the reports do not reach the jury's question of whether The Regents' conduct was deliberately indifferent. *Id.* at 5. Plaintiffs assert that the reports will not cause undue prejudice or confusion because plaintiffs will offer the reports to inform the jury about the information plaintiffs presented to defendant and when and to whom it was presented. *Id.* at 6. Finally, plaintiffs propose that the Court could provide the jury a limiting instruction regarding the difference between the elements of plaintiffs' causes of action and the conclusions reached by the investigators in their reports. *Id.* at 6.

The motion is denied, subject to the limitations discussed below.

During the pretrial conference, The Regents conceded that factual findings in the investigative reports concerning Professor Achlioptas are admissible pursuant to Rule 803(8), which provides that "[a] record or statement of a public office" may be admitted "if: (A) it sets out: . . . (iii) in a civil case . . . factual findings from a legally authorized investigation; and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)(iii) and (B); *see also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988) (investigative report prepared pursuant to authority granted by the manual of the Judge Advocate General, which included "findings of fact," "opinions," and

9

"recommendations," was admissible under Fed. R. Evid. 803(8)(C)). These reports include those listed as Trial Exhibits 214, 217, and 219. Some matters within these reports may nevertheless be inadmissible hearsay, and to the extent plaintiffs seek to offer those statements in evidence, The Regents may object on that ground, and the Court will decide the objection. *See, e.g., Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013) ("[T]he presumption for reliability that serves as the premise for the public-records exception does not attach to third parties who themselves have no public duty to report. [citation omitted] Accordingly, third-party statements contained in a police report do not become admissible for their truth by virtue of their presence in a public record and instead must have an independent basis for admissibility.").

Trial Exhibit 218 is an investigative report that includes factual findings regarding Mr. Sherman's claim that Professor Sgourakis retaliated against him. Trial Exhibit 220 is an investigative report that includes factual findings regarding Mr. Hammoudeh's claim that Professor Warmuth retaliated against him. The Regents object that these reports as irrelevant because the alleged retaliation is not an issue for trial. Plaintiffs respond that these reports include factual findings indicating that Professor Achlioptas was using Professors Sgourakis and Warmuth to continue harassing plaintiffs or to influence the course of the University's investigation of him, and that they are admissible to show that plaintiffs continued to experience harassment from Professor Achlioptas or his proxies, and to be vulnerable to such harassment, well after the University had actual notice of the harassment. The Court has reviewed Trial Exhibits 218 and 220 and concludes that portions of them are admissible under Rule 803(8) for the purposes plaintiffs describe. However, the Court will not permit plaintiffs to use the reports to attempt to establish that Professors Sgourakis and Warmuth themselves harassed or retaliated against plaintiffs, as no such claims are at issue here.

**D.     Motion in Limine No. 4 (Other Title IX Complaints or Investigations)**

The Regents move to preclude plaintiffs from presenting evidence regarding how The Regents allegedly conducted Title IX investigations unrelated to the plaintiffs. Dkt. No. 62. The Regents also appear to seek exclusion of any testimony by other students or people who believe that they were discriminated against by people other than Professor Achlioptas. *Id.* at 4. The

Regents argue that such evidence would not be relevant because it is unrelated to the plaintiffs' personal experience, and that it would be unfairly prejudicial to The Regents, forcing The Regents to refute the admission of such evidence or allow the jury to hear only "one side of each story." *Id.* at 5–6. The Regents also argue that such evidence would be impermissible character evidence. *Id.* at 6.

Plaintiffs oppose this motion on several grounds. First, plaintiffs do not seek to affirmatively introduce testimony about Title IX complaints or investigations or allegations relating to persons not involved in this case. Dkt. No. 95 at 2. Plaintiffs assert that to the extent such evidence is offered, it will be offered for impeachment purposes or to bear on the credibility or bias of a witness. *Id.* at 2–3. Second, plaintiffs argue that any evidence that Professor Achlioptas or other professors harassed third-party graduate students is relevant to show the "full extent of the abuse reported by plaintiffs to defendant and the full extent of Achlioptas' conduct that defendant had knowledge of." *Id.* at 4–5. Plaintiffs also assert that they do not intend to admit evidence that The Regents acted with deliberate indifference towards the harassment of other students. *Id.* at 4.

The motion is granted as unopposed. Plaintiffs may not introduce evidence of Title IX investigations involving other complainants and complaints against other faculty or staff.

### E.   Motion in Limine No. 5 ("Stray Remarks" by Professor Achlioptas)

The Regents move to preclude plaintiffs from presenting evidence or eliciting testimony about "stray remarks" made by Professor Achlioptas to students, faculty, and people other than plaintiffs. Dkt. No. 63. The Regents argue that such evidence is impermissible character evidence used to prove the likelihood of similar conduct toward plaintiffs, and that it would be unduly prejudicial by evoking emotional bias against The Regents. *Id.* at 3–4. The Regents also invoke the "stray remarks doctrine," under which isolated stray remarks unrelated to an adverse action are not probative of employment discrimination. *Id.* at 5.

Plaintiffs oppose this motion, arguing that evidence of Professor Achlioptas's conduct is directly relevant to plaintiffs' claims to the extent that they reported it to The Regents. Dkt. No. 96. Specifically, plaintiffs assert that they do not intend to offer evidence of Professor

11

1    Achlioptas's harassment toward other students or faculty to prove that he acted similarly towards

2    them, but rather to show that plaintiffs witnessed these acts and reported them to The Regents. *Id.*

3    at 2–3.  Further, plaintiffs argue that such evidence will not be unduly prejudicial because

4    plaintiffs are entitled to present to the jury relevant evidence of all the information regarding

5    Professor Achlioptas's misconduct known to The Regents, so the jury can decide whether The

6    Regents' response to plaintiffs' complaints was clearly unreasonable.  Finally, plaintiffs argue that

7    The Regents' invocation of the "stray remarks doctrine" is inapplicable because plaintiffs do not

8    seek to use remarks made to others to prove that Professor Achlioptas discriminated against them

9    in the workplace. *Id.* at 4–5.

10   The motion is granted, subject to the limitations discussed below.

11   Plaintiffs may not introduce evidence of the specific remarks listed on page 3 of The

12   Regents' motion. *See* Dkt. No. 63 at 3.  The Court has reviewed the deposition testimony lodged

13   with the Court on May 10, 2022.  Nothing in the transcribed testimony reflects that these remarks

14   were made about the plaintiffs or were known to them, nor is there any evidence reflecting that the

15   appropriate University officials knew of any of these remarks.  Moreover, all but one of these

16   remarks appears to wholly unrelated to plaintiffs' complaints of sexual harassment and harassment

17   based on race, national origin, and/or religion.  Accordingly, the evidence that is the subject of this

18   motion in limine is distinguishable from evidence that may properly be admitted to show that the

19   University had knowledge of Professor Achlioptas's complained of conduct and acted with

20   deliberate indifference. *See, e.g., Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027,

21   1038 (9th Cir. 2005) (where one of two decisionmakers involved in the hiring of an open position

22   made frequent sexist remarks directed generally at women and women besides the plaintiff, such

23   remarks were not "stray" or "unrelated to the decisional process"); *see also Cordova v. State Farm*

24   *Ins. Co.*, 124 F.3d 1145, 1149 (9th Cir. 1997) (racial insult made by a decisionmaker about

25   another member of plaintiff's class not a stray remark, where timing of decisionmaker's alleged

26   remarks was "not so far removed from the contested hiring decision so as to render them

27   completely unrelated to that decision").

28

### F. Motion in Limine No. 6 (Evidence Related to Adjudicated Claims)

The Regents seek to exclude evidence regarding (1) research misconduct allegations against Mr. Sherman and The Regents' response to these allegations; (2) The Regents' alleged actions toward Mr. Sherman in connection with finalizing his thesis; (3) Mr. Sherman's alleged pay disparity; (4) alleged discrimination toward Mr. Sherman by Professor Achlioptas; and (5) alleged harassment toward plaintiffs by Professor Achlioptas. Dkt. No. 81 at 2. The Regents argue that all remaining claims, but for Mr. Hammoudeh's national-origin discrimination claim, have the same essential elements: that the Regents had "actual knowledge" of harassment and that The Regents responded with "deliberate indifference." *Id.* at 2–3 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 275 (1998)). Therefore, The Regents argue that the evidence is not relevant to proving these elements. In addition, The Regents insist that any evidence from Mr. Sherman or Mr. Hammoudeh regarding the underlying harassment allegations, including their own account of it, should be excluded, as "the relevant inquiry is not whether the events occurred, but is instead The Regents' response to actual knowledge of the events." *Id.* at 4 n.2.

Plaintiffs oppose this motion, arguing that all evidence of Professor Achlioptas's harassment of plaintiffs is relevant to their remaining claims because this evidence will show "the full nature and extent of their complaints and the harassment they suffered so the jury can properly evaluate if defendant's response to the complaints [was] inadequate under the circumstances." Dkt. No. 98 at 3–4. Plaintiffs assert that such evidence is not unduly prejudicial, but propose that the Court could offer a limiting instruction that evidence of Professor Achlioptas's conduct is not offered to prove his misconduct, but rather the reasonableness of The Regents' response. Finally, plaintiffs assert that evidence of Professor Achlioptas's "animus" is relevant to both plaintiffs' Unruh Civil Rights Act causes of action and to Mr. Hammoudeh's discrimination claim. *Id.* at 5.

The motion is granted, in part, and denied, in part. As explained above, plaintiffs may not introduce evidence in support of claims that have been dismissed following the Court's order on summary judgment. However, plaintiffs may introduce evidence of Professor Achlioptas's conduct because The Regents do not concede that plaintiffs suffered harassment that was so severe, pervasive, and offensive that it effectively deprived them of the right of equal access to the

educational benefits and opportunities offered by the University, and because evidence of Professor Achlioptas's behavior will inform the jury's assessment of whether the University's response to the harassment was clearly unreasonable in light of all the known circumstances.

**IT IS SO ORDERED.**

Dated: May 10, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge